419 A.2d 41

COMMONWEALTH of Pennsylvania

v.

Reuben GRAVES, Appellant.

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed Feb. 15, 1980.

558

Eugene H. Clarke, Jr., Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant takes this appeal from his conviction for arson endangering persons [1] and for arson endangering property.[2] Appellant raises two issues in this appeal: 1) Whether the trial court erred in denying appellant's motion to suppress an incriminating statement made by appellant subsequent to his arrest, and, 2) whether the evidence was sufficient to sustain a verdict of guilty to the charge of arson. The lower court ruled against appellant on these issues and appellant now challenges that ruling. We affirm.

On October 23, 1976, at approximately 10:00 p. m., the first of two fires occurring in appellant's apartment at 4027 Powelton Avenue, Philadelphia, Pennsylvania, was reported. Firemen were called to the scene and upon entering appellant's third floor apartment they found the sofa to be on fire. While the firemen were at the scene, they were approached by appellant, who volunteered the inculpatory statements, "I did it, take me in," and "I'm going to clean out the whole third floor some day." Appellant also made similar remarks to Police Officer W. H. Campbell, essential-

1. 18 Pa.C.S.A. § 3301(a) (1973).

2. 18 Pa.C.S.A. § 3301(b) (1973).

ly: "I started the fire, take me in." Officer Campbell observed that appellant appeared excited and was sweating when he made these statements. Though appellant was not formally arrested at that time, Officer Campbell thought that appellant "needed some type of psychiatric evaluation" based on appellant's excitedly stated admissions. Therefore, at approximately 10:45 p. m. Officer Campbell took appellant to the psychiatric unit of Philadelphia General Hospital (PGH). The psychiatrist permitted appellant to return to his home where he arrived at approximately 12:15 a. m. When he arrived, he was unable to enter his apartment because a second fire was taking place in it.[3] This later fire was much more serious than the first and resulted in the death of one of the tenants in the building, Edward "Geach" Kirkland. Thus, while appellant was waiting outside his apartment, Fire Lieutenant Duff recognized appellant, and he was placed under arrest at approximately 12:20 a. m. by Officer Campbell who was also present at the scene of the fire.

Appellant was taken to detective headquarters where he remained for an unspecified time, without being questioned. When authorities learned of the discovery of "Geach" Kirkland's body, appellant was transported to the Philadelphia Police Homicide Division, at the Police Administration Building located at 8th and Race Streets. Appellant arrived at Homicide Division at 2:40 a. m., and was promptly taken to an interview room where he was given a drink of water and then left alone until 3:30 a. m. when an officer returned briefly to check on appellant, but did not interrogate him. Appellant then remained alone until about 5:20 a. m., when Detective Craig Peterson arrived to question appellant. The interview concluded at 6:23 a. m. when appellant read over a typed inculpatory statement and signed it. Appellant was not arraigned until 4:20 p. m. According to Detective Peterson, although appellant appeared somewhat nervous

---

3. Expert testimony provided at trial indicated that this second fire was entirely separate in origin from the first fire, but that both fires appear to have been started by an open flame, such as by a match or cigarette lighter.

during the interview, he was nonetheless cooperative and did not appear to be under the influence of alcohol or narcotics. It appeared to Detective Peterson that appellant understood both the questions and the reason for his arrest. In his statement appellant admitted that he had started the first fire by dropping a match onto a paper bag. Subsequently, appellant was charged with and convicted of setting the first fire, but was not found to be responsible for the fire which resulted in "Geach" Kirkland's death.

Appellant first argues that his statement should have been suppressed under the ruling of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), wherein the Supreme Court ruled that a confession obtained as a result of unreasonable delay between arrest and arraignment is to be suppressed.[4] In *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974) the Supreme Court established a three–prong test to determine when evidence has been obtained in violation of *Futch* :

1. The delay must be unnecessary;
2. The evidence must be prejudicial; and,
3. The evidence must be reasonably related to the delay.

Subsequent cases have made it clear that the only relevant time period, when analyzing a *Futch* claim of unreasonable delay, is that time period between arrest and voluntary self–incrimination. *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979); *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974).[5] Therefore, in appellant's case, the time period upon which we must focus is the time between

---

4. It should be noted that appellant's case arose before the prospective relief granted in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) (any statement taken more than six hours after arrest and prior to arraignment must be suppressed).

5. Therefore, the fact that appellant was not arraigned until sixteen hours after the taking of his statement is not relevant to his *Futch* argument, since no further questioning of appellant occurred after 6:23 a. m. *See, e. g., Commonwealth v. Van Cliff*, 483 Pa. 576, 587, 397 A.2d 1173, 1179 (1979), cert. denied, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070; *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973).

appellant's arrest at 12:20 a. m. and the beginning of his statement at 5:20 a. m. Taking into consideration this time period, the hearing court found that appellant failed to show any nexus between the delay and the challenged evidence. We are in agreement with the hearing court.

Although there is no set time limit which constitutes an "unnecessary delay," *Commonwealth v. Abu–Ibn Hanifah Bey*, 462 Pa. 533, 536, 341 A.2d 907, 908 (1975), it nonetheless should be noted that time periods comparable to that in appellant's case have been found to be within the mandate of *Futch*. See, e. g., *Commonwealth v. Jones*, 473 Pa. 381, 374 A.2d 970 (1977) (O'Brien, J., with two Justices concurring) (five hours); *Commonwealth v. Young*, 460 Pa. 598, 334 A.2d 252 (1975) (five hours); *Commonwealth v. Rose*, 265 Pa.Super. 159, 401 A.2d 1148 (1979) (six hours). Compare *Commonwealth v. Abu–Ibn Hanifah Bey, supra* (five hours was unnecessary delay). The *Bey* case can readily be distinguished from appellant's because the accused in *Bey* steadfastly denied any involvement in the crime and only gave a statement after prolonged questioning. The Supreme Court found this fact to be decisive in determining that there was a nexus between the delay and the accused's confession. 462 Pa. at 535, 341 A.2d at 908. This initial denial of guilt has been adjudged significant in other decisions of the Supreme Court. *See e. g., Commonwealth v. Johnson*, 459 Pa. 171, 327 A.2d 618, 458 Pa. 425, 327 A.2d 618 (1974) (two cases) *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973). *See also Commonwealth v. Young*, 460 Pa. 598, 334 A.2d 252 at 254 (dissenting opinion of Roberts, J.). In the instant case, appellant showed no reluctance in admitting his guilt, either at the scene of the first fire or when Detective Peterson began questioning him. For these reasons, we find that the lower court was correct in concluding that there was no nexus between the delay and appellant's confession.[6]

---

**6.** In this argument, appellant also asserts that Detective Peterson was aware that appellant had spoken to a psychiatrist a few hours

■   Appellant next argues that the evidence was insufficient to support his conviction for arson, allegedly because the Commonwealth failed to prove that appellant intentionally started the fire.  The test for sufficiency of evidence in a criminal case is whether, viewing all of the evidence admitted at trial in the light most favorable to the verdict winner and drawing all reasonable inferences therefrom favorable to the verdict winner, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.  *Commonwealth v. Liddick,* 485 Pa. 121, 401 A.2d 323 (1979).  In the instant case, appellant contended at trial that he had inadvertently dropped the lighted match onto the paper bag.  The lower court, sitting without a jury, found appellant's trial testimony to lack credibility, and noted that appellant's testimony was contrary to his spontaneous statements at the scene and his post–arrest confession.  Since the trier of fact is free to believe all, part, or none of the evidence, *Commonwealth v. Smith,* 484 Pa. 71, 398 A.2d 948 (1979), the trial judge was under no duty to credit appellant's trial testimony over appellant's pre-trial statements.  Accordingly, we find the evidence to be sufficient to support the verdict.[7]

Affirmed.

prior to his interview and, consequently, should not have questioned appellant without first asking the psychiatrist about appellant's "mental condition."  This argument is unsound.  Failure of the interrogating officer to ask doctors about an accused's medical condition and about what medication had been administered to him does not *per se* render a defendant's confession invalid.  *Commonwealth v. Hunt,* 263 Pa.Super. 504, 398 A.2d 690 (1979) and cases cited therein.  In past cases, the court has found the testimony of the interrogating officer to be enough to establish voluntariness.  *Commonwealth v. Hunt,* supra.

7.  We note for the record that appellant raised no issue concerning the legality of his sentence.  It appears from the record of sentencing that the lower court took into consideration the fact that "Geach" Kirkland died during the second fire.  However, since appellant was not convicted of setting the second fire, Kirkland's death is an improper consideration in sentencing.  See, *Commonwealth v. Bethea,* 474 Pa. 571, 379 A.2d 102 (1977) (sentence based in part on impermissible consideration is not made proper simply because sentencing judge considers other permissible facts as well.)  However,

since appellant failed to first petition the court to withdraw its sentence, we cannot address this issue. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).