631 A.2d 1053

**COMMONWEALTH of Pennsylvania**

v.

**James Walton SMITHTON, Appellant.**

Superior Court of Pennsylvania.

Submitted June 7, 1993.

Filed Sept. 29, 1993.

56

Gary L. Dorsett, Asst. Public Defender, Reading, for appellant.

Carolyn L. Darringer, Asst. Dist. Atty., Reading, for Com., appellee.

Before McEWEN, KELLY and CERCONE, JJ.

KELLY, Judge.

In this opinion we are called upon to determine whether a trial court's consideration during sentencing of the testimony of alleged victims of crimes for which the defendant was acquitted constitutes reversible error. We hold that it does and vacate and remand for a new sentencing hearing.

The relevant facts and procedural history were set forth in the Commonwealth's brief as follows:

Appellant was charged by information in three related cases which were consolidated for trial. On September 1, 1992, appellant was tried before a jury and found guilty of Disorderly Conduct [1] at Criminal Action No. 1520/92; and Resisting Arrest [2] and Disorderly Conduct [3] at Criminal Action No. 1521/92. The jury acquitted appellant of Criminal Trespass and Criminal Mischief at No. 1710/92. The charges arose out of appellant's conduct on April 20–21, 1992.

In No. 1710/92, appellant broke into the home of Donna and Richard Hinkle by breaking through the Hinkle's front glass door. The Hinkles did not know appellant before this incident. Richard Hinkle discovered appellant inside their home and fearing for his life and that of his family, attacked appellant with a shard of glass. Then, the Hinkles called the police. Appellant was found a short time later a few blocks away, bleeding from his wound. Police transported appellant to Community General Hospital in Reading, Pennsylvania for treatment.[4]

Appellant's conduct at the hospital lead to the charges in No. 1521/92. While there, appellant was loud and boisterous and pushed a hospital technician. Appellant shouted profanities at the technician as she tried to treat him. Appellant also hurled profanities at police in a public area of the hospital. Appellant, who was HIV positive, spit upon

Officer Burr several times. After appellant was released, in the hospital parking lot, appellant refused to be transported to City Hall for arraignment. Four police officers had to wrestle appellant to the ground in order to place appellant in the police vehicle.

At City Hall, appellant again was disorderly shouting profanities and being unruly as police attempted to take him for arraignment. This incident lead to the charges at No. 1520/92 of Disorderly Conduct.

Following his conviction at Nos. 1520/92 and 1521/92 of Resisting Arrest and Disorderly Conduct, appellant filed post verdict motions for a new trial and/or arrest of judgment which were denied after a hearing.

Appellant was sentenced on September 10, 1992, to the following term of incarceration. Appellant received a sentence of not less than 11 and a half months nor more than 24 months incarceration for the crime of Resisting Arrest at No. 1521/92. (N.T., Sentencing Hearing, September 10, 1992, p. 55). Appellant received a sentence of not less than 6 months nor more than 12 months for the crime of Disorderly Conduct at No. 1521/92 to be served consecutive to the sentence for Resisting Arrest. *Id.* Appellant received a sentence of not less than 6 months nor more than 12 months incarceration for the crime of Disorderly Conduct at 1520/92 to be served consecutive to the above sentences. *Id.* at p. 55–56. Hence, appellant received an aggregate sentence of 23 and one half months to 4 years.

On September 24, 1992, appellant filed a motion to Modify or Reconsider Sentence. After a hearing on October 20, 1992, the trial court denied appellant's motion.

It is from the judgment of sentence entered on September 10, 1992, that appellant seeks allowance of appeal.

---

1. 18 Pa.C.S.A. § 5503(a).
2. 18 Pa.C.S.A. § 5104.
3. 18 Pa.C.S.A. § 5503(a).
4. At trial, appellant claimed that the reason he broke into the Hinkle's home was to seek protection from a group of individuals who

were pursuing him. Appellant was acquitted of the charges of criminal trespass and criminal mischief.

Commonwealth's Brief at 2–4.

On appeal, appellant contends that the trial court abused its discretion in sentencing him. After careful consideration of the relevant law and the record certified to us on appeal, we agree.

■ The imposition of sentence for offenses whether high or petty is among the severest tests for a trial court. Within the constraints of certain statutory maximums and minimum sentences enacted to ensure a measure of predictability and certainty, our legislature has vested .the sentencing courts with great discretion to impose sentence in Pennsylvania. It has done so because of its resolve that the measure of condign punishment may not be foretold through an inflexible and inviolable sentencing code.

The discretion and deference afforded to the sentencing court by the legislature is not, however, unfettered. Appellate courts of this Commonwealth retain the power and the duty to vacate sentences imposed where an abuse of discretion has been committed. *See Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). The instant case presents just such a scenario.[1]

■ In the instant case, a particularly unusual set of circumstances was presented to the court in sentencing. Appellant, who is a victim of the tragic and deadly disease AIDS, had been charged, but not convicted, of crimes related to the unlawful entry of the home of Donna and Richard Hinkle. During the trial of these charges, appellant did not dispute

---

1. We note that appellant has complied with both the procedural and substantive prerequisites for allowance of appeal to be granted pursuant to Pa.R.Crim.P. 2119(f). *See Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987). A concise statement of reasons for allowance of appeal appears in appellant's brief. Moreover, his claim that the sentencing court abused its discretion presents not only a substantial question for our review but also, as explained below, grounds to vacate the sentence. Accordingly, we grant allowance of appeal. *See Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988).

that he had entered the Hinkle's home without their consent. On the contrary, his defense at trial was that he was justified in entering the Hinkle's home, even without their consent, because he was reasonably in fear for his life at the time. The jury apparently credited appellant's contention and acquitted him of all charges relating to his conduct while at the Hinkle's home. Appellant was convicted of crimes listed on separate criminal informations which technically included only charges relating to appellant's conduct during and after his arrest. It was for these crimes, and these crimes only, that appellant was to be sentenced.

At the sentencing hearing, however, the trial court decided to hear testimony of Donna and Richard Hinkle, explaining to the Hinkles that:

[THE COURT:] I'm glad you're here for this reason. Quite innocently, you and your family got into a legal situation by doing nothing, just being home that night.

DONNA HINKLE: Yes, sir.

THE COURT: I have been disturbed that you and your husband would never fully understand just how the law works. It's very easy to dismiss the law, but the law has been around a long time. And we deal not with specific cases. The law deals with the general law. And you were dealt the bad hand, I suppose, here. That's the best you can say for it.

DONNA HINKLE: Very.

THE COURT: A very bad hand. Today there's a great philosophy that nothing's done without fault. When I first went to law school, we used to have a legal expression called damnum absque injuria. I think that's the correct expression. You broke your ankle, it was your own dumb fault. You didn't look to see how many people you could blame. Spent a lot of time trying to find somebody who's responsible for your ankle, which you broke. You know what I mean? I think you have to be very philosophical about the situation that you're in. I'm glad you're here because I was

very concerned about how you and your husband would take all this.

DONNA HINKLE: It's very hard.

THE COURT: It's not the type of thing you go home tonight and you have a final answer. You have to live with whatever happens here for some time. But the law did carry out to its conclusion here, and now we'll have to deal with what's left. But I will—

DONNA HINKLE: We will accept that.

    \*    \*    \*    \*    \*    \*

THE COURT: The one thing you're going to have to be careful about is this. I don't think you should ever misconstrue what the jury did. The jury—don't ever think that the jury didn't believe you. My own personal reaction is that the jury believed you and your husband. It's just that we came in to play with this other thing called justification. In other words, before your door was knocked on, there was another chapter that nobody heard about. Right or wrong, that's what the jury believed. You understand that?

DONNA HINKLE: Um-hum.

THE COURT: I believe they believed you and your husband. It's just that they also believed this justification theory and accepted it. But don't get the idea that they didn't necessarily believe you. I don't think your credibility's involved at all. Understood?

DONNA HINKLE: Yes.

N.T. September 10, 1992 at 9–11. Thus, Mrs. Hinkle testified as follows:

Sir, I would like to say, someone with HIV—the things that we have been through since April 21st has been very traumatic. All right. My husband was cut very badly during the struggle between Mr. Smithton and my husband when he came through my doors. There is no one trying to elaborate on this or anything else. We only want the truth to be said. My husband could have HIV because of Mr. Smithton. I could have HIV because of Mr. Smithton. And

if that, in fact, is the case, that it does come up, who's going to take care of our four-year-old daughter?

Okay. Mr. Smithton is thinking of Mr. Smithton. He is thinking of, oh, I want to come out, I want to do right, I want to get back on track, I want to do what I'm supposed to do. But what happens to the people that he has inflicted and—or might have infected and just has walked over and does not give thought to? That is what we are living with everyday now.

My husband and I have been together for a very long time, and I never thought I would ever have to worry about HIV. And I'll tell you something. It is something that's very scary. And to look at my daughter, and to think, and to have those feelings, yes, they do make you angry. And, I'm sorry, I do feel that Mr. Smithton is a menace to society, and I feel that, no, he should not be left out. I feel that he should seek help and he should take and get help, but I do not feel that he should be left out to go and do the same thing to someone else that he has done to us, because it does tear your life upside-down.

N.T. September 10, 1992 at 7–8.

█ It is an abuse of discretion, as a denial of due process of law, for the sentencing court to consider irrelevant factors during sentencing. Thus, previous sentences have been vacated because, in imposing sentence, the sentencing court relied upon, *e.g.*: the defendant's decision to stand trial rather than plead guilty, *Commonwealth v. Bethea,* 474 Pa. 571, 580, 379 A.2d 102, 106, 107 (1977); prior constitutionally infirm convictions, *Commonwealth v. Calvert,* 463 Pa. 211, 344 A.2d 797 (1975); the defendant's political ideology, *Commonwealth v. Berrigan,* 369 Pa.Super. 145, 535 A.2d 91 (1987) (*en banc* ), *allocatur denied,* 521 Pa. 609, 557 A.2d 341 (1989), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 173 (1989); unverified hearsay, *id.;* and the defendant's status as a naturalized citizen, *Commonwealth v. Dugan,* 335 Pa.Super. 82, 483 A.2d 965 (1984).

■ It is not enough that a trial court simply *entertained* impermissible evidence in its deliberations. A court is "ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence." *Commonwealth v. Penrod*, 396 Pa.Super. 221, 578 A.2d 486, 491 (1990). Thus, a sentence must be vacated only where "it reasonably appears from the record that the trial court *relied* in whole or in part upon such [an impermissible] factor." *Commonwealth v. Bethea, supra*, 379 A.2d at 107 (emphasis added).

Here, the Hinkle's testimony was unquestionably irrelevant in appellant's sentencing. The charges of which appellant was found guilty, though indirectly related by the loosely formed concatenation of events which transpired on the evening of appellant's arrests, were contained in separate Criminal Informations and did not involve the Hinkles. In *Commonwealth v. Graves*, 275 Pa.Super. 557, 419 A.2d 41 (1980), a similar circumstance arose. There, the defendant had been charged with two separate counts of arson based on the Commonwealth's allegation that he had deliberately set two separate but related fires in his apartment building. The second fire was much more serious than the first and resulted in the death of one of the tenants of the building, Edward "Geach" Kirkland. Ultimately, the defendant was convicted of setting the first fire but found not responsible for the second. Notwithstanding this fact, the sentencing court considered the death of Mr. Kirkland when sentencing the defendant. Curiously, the defendant did not challenge his sentence on appeal. Nonetheless, in *dicta*, this Court took care to point out the error:

> It appears from the record of sentencing that the lower court took into consideration the fact that "Geach" Kirkland died during the second fire. However, since appellant was not convicted of setting the second fire, Kirkland's death is an improper consideration in sentencing.

*Id.* at 563–64 n. 7, 419 A.2d at 44 n. 7 (citing *Commonwealth v. Bethea, supra* ).

64

In the instant case, the testimony of the Hinkles is materially indistinguishable from the evidence of the death in *Graves.* In each case, the challenged evidence bore directly on crimes for which the defendant had been acquitted. It was, therefore, irrelevant testimony during sentencing. To rule otherwise would give precious little meaning to the acquittal. This, of course, we cannot do.

■ This is not to say that "victim impact" testimony is impermissible. We must take care to distinguish the present irrelevant and impermissible testimony of the Hinkles from the relevant and wholly permissible "victim impact" testimony. Where a defendant is convicted of a crime against a person, that person is considered by the law to have been a victim of the defendant's crimes. The legislature has authorized the trial court to consider "the gravity of the offense as it relates to the impact on the life of the victim and on the community." 42 Pa.C.S.A. § 9721. Thus, "victim impact" statements have been expressly upheld by this Court and others before. *See, e.g., Payne v. Tennessee,* —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *Commonwealth v. Nieves,* 399 Pa.Super. 277, 582 A.2d 341 (1990); *Commonwealth v. Penrod, supra.* The critical distinction in this case is that appellant was *not* convicted of a crime against the Hinkles. Thus, there is, strictly speaking, no legal authority for considering the Hinkles "victims" or for considering the impact of appellant's conduct on their lives. This testimony was, therefore, irrelevant at appellant's sentencing.

Moreover, review of the record reveals that the admission of this irrelevant testimony requires new sentencing herein. In pertinent part, the sentencing transcript reads:

I've read what records we do have involving you. I was interested in knowing more about you, because, on the one hand, I certainly sympathize with anybody that has a future outlook that you don't have. *But the one thing that I was waiting for and never heard was an expression of sincere and real concern for the living hell that you have put the Hinkles into, even while you complained about the hell you're going through.*

N.T. September 10, 1992 at 53 (emphasis added). Furthermore, during sentencing the court specifically advised appellant: "You may have conned the jury, but you're not going to con me." *Id.* at 49. The remorse the trial court awaited was not relevant. The jury's findings were not at issue. Appellant was not found guilty of any crimes against the Hinkles. The Hinkle's testimony was irrelevant and the court's reliance upon it undeniable.

█ It is true that the trial court relied upon factors other than the Hinkles' testimony in imposing sentence. It is also irrelevant for our purposes. Where, as here, a trial court relies upon an impermissible factor, *in whole or in part*, new sentencing must be afford. *See Commonwealth v. Bethea, supra.* Accordingly, we are constrained to vacate appellant's sentence.[2]

Judgment of sentence vacated and case remanded for resentencing.

**2.** We note that appellant has not raised any motion for recusal of the sentencing judge. *See, e.g., Commonwealth v. Darush,* 501 Pa. 15, 459 A.2d 727 (1983). The sentencing court's impartiality is, therefore, not properly before us and accordingly, we express no opinion in this regard.