J-A24007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ROBERT DAVID CALDWELL, II | |
| Appellant | No. 189 WDA 2017 |

Appeal from the Judgment of Sentence December 22, 2016
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001359-2015

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED OCTOBER 19, 2017**

Robert David Caldwell II appeals from the December 22, 2016 judgment of sentence entered in the Fayette County Court of Common Pleas on two counts of possession of child pornography, and one count each of display of obscene and other sexual materials and criminal use of a communication facility.[1]  We affirm.

On July 28, 2016, Caldwell pled *nolo contendere* to the aforementioned charges.[2]  On December 22, 2016, the trial court held a sentencing hearing. At that hearing, Dr. Allen Pass,[3] a psychotherapist, testified on behalf of

---

[1] 18 Pa.C.S. §§ 6312(d), 5903(a)(1), and 7512(a), respectively.

[2] Caldwell's father, Robert David Caldwell, also pled *nolo contendere* to sexual offenses similar to those of his son.

*(Footnote Continued Next Page)*

Caldwell. After both parties examined Dr. Pass, the trial court questioned Dr. Pass about the end of Caldwell's treatment program, which included a discussion of supervision of sex offenders:

> THE COURT: So once they've successfully completed whatever, length you determine is necessary for each you don't monitor future behavior. There's nothing that you're doing to check on relapsing.
>
> [DR. PASS]: No, that part of the program then falls directly on the Probation or the Parole Officer so that if a Probation Officer while governing or supervising the offender believes that they're in need of a consult they contact our office, we set up an appointment and/or bring the offender back in for a follow up polygraph.
>
> THE COURT: If you've completed your treatment how do you bring them back for a follow up polygraph?
>
> [DR. PASS]: At the request of the Probation or the Parole Officer.
>
> THE COURT: And I'm sure you realize that most county Probation and Parole Officers are not trained specifically in this field.
>
> [DR. PASS]: Correct.
>
> THE COURT: I mean their ability to ascertain a violation is going to be looking at the computer.
>
> [DR. PASS]: Correct.
>
> THE COURT: I mean there's nothing they can do vis a vis the person unless there's an admission.
>
> [DR. PASS]: That is correct in part. What we've noticed for instance in Allegheny County, Butler County, these counties have developed specialized sex offender Probation

_(Footnote Continued)_ _____

[3] Caldwell's father was sentenced on the same day and also was being treated by Dr. Pass.

Officers who undergo specialized training in managing this offender group and as a result even after an offender is discharged from a program that discharge is obviously discharge from the core elements of the program but he or she is still on probation. So if the Probation Officer makes a determination, and I can tell you the ways in which they do this, but if they make a determination that they suspect that the offender is relapsing then they contact the office, we set up a meeting, review the allegations or the potential for the violation and then bring the offender back in and then retest.

THE COURT: So they or the Court could trigger bringing you back in?

[DR. PASS]: Absolutely.

THE COURT: Are the state parole agents, do they have specific training in this field?

[DR. PASS]: Yes, they do. I work with the parole agents from various counties who have, obviously also are specifically assigned to manage sex offenders, and it works very well actually because to be honest with you, Your Honor, they're a different group of offenders and you have to be very careful of them.

THE COURT: Yes, it's more a mental than it is –-

[DR. PASS]: Yes, sir.

THE COURT: -- an overt act, physical kind of act.

N.T., 12/22/16, at 40-41. The trial court also asked Dr. Pass about his experience with other states' parole agencies, as Caldwell had moved to Florida during the pendency of his case:[4]

_____

[4] The certified record is unclear as to when Caldwell moved to Florida. The first indication in the record that Caldwell was a resident of Florida was in his December 21, 2016 sentencing memorandum.

THE COURT: Doctor, again, not to belabor this, do you have any familiarity in your professional experience with Florida parole?

[DR. PASS]: Well we do have, to the best of my knowledge the last time I checked, and of course this is always subject to change, we do have an Interstate Transfer Compact Agreement.

THE COURT: I mean do they have similar, are their agents similarly trained as our state parole agents are?

[DR. PASS]: I cannot speak specifically to their level of training but what I can say is that my readings on this specialty area because it is a growing concern across the United States more and more jurisdictions, state jurisdictions and their respective counties are in fact advocating specialized training for agents.

N.T., 12/22/16, at 45.

Shortly thereafter, the trial court excused Dr. Pass from the witness stand. Before Dr. Pass left the courtroom, however, the trial court asked him to opine on Caldwell's potential employment plan:

[CALDWELL'S COUNSEL]: And, Your Honor, if I may, just a couple housekeeping matters. Same situation with [Caldwell], the PSI lists him as unemployed. He would be, he has available employment and is I believe working presently. Do you have available employment depending on what happens here today? So he has employment available for him.

THE COURT: Can you share with us what that might be?

[CALDWELL'S COUNSEL]: [Caldwell's father] is opening up a business franchise.

THE COURT: Of?

[CALDWELL'S COUNSEL]: Ice cream. Frozen yogurt, sorry.

THE COURT: Doctor, you didn't get out of the room quick enough.

[DR. PASS]:   Do you need me again?

THE COURT:   Just a question from where you are.

[DR. PASS]:   Yes, sir.

THE COURT:   I love ice cream so this may not apply to the population generally, but when I think of ice cream I think of kids.  Any risk factor involved here?

[DR. PASS]:   Well it's an excellent question, Your Honor, and I would agree.  I think that ice cream by its very nature would draw children either on their own or under the supervision of their parents, and I think in my opinion is that there would have to be the necessary precautions taken if in fact [] Caldwell['s father] is going to execute this as part of his business plan as to how he would be monitored at that facility.  In other words, is he going to be a face to face service person for the children or is he going to be in the back room or perhaps he's just going to manage it from afar on a PNL basis.

THE COURT:   Well, also, who's he going to employ?

[DR. PASS]:   Assumingly, you're right again.  I don't know if he's going to employ, what age range, but of course just speaking from my own knowledge if I were running a business I wouldn't want to employ anyone under the age of eighteen.

THE COURT:   Well I can tell you at age thirteen I started in a Dairy Queen in Braddock, Pennsylvania.

[CALDWELL'S COUNSEL]: Your Honor, if I may, he has other employment available to him as well if that was going to be an issue.

THE COURT:   You threw it out and it just—

[CALDWELL'S COUNSEL]:  I'm just saying that we do have, he does have employment available.

THE COURT:   --threw flags up.

. . .

[THE COMMONWEALTH]: Your Honor, following up with that, what's the other employment.

- 5 -

[CALDWELL'S COUNSEL]: If I may, Judge –

[THE COMMONWEALTH]: And this just with regard to [Caldwell's father]. We need to address [Caldwell] as well.

THE COURT: I will.

[CALDWELL'S COUNSEL]: Part of their conviction in this matter is going to make them, and Dr. Pass could talk about this more, compliant with the Adam Walsh Act and Megan's Law, and there's conditions in that specifically addresses where the person can work and what their involvement with children is. That's where they can live, where they can work, who they can be around and we're seeing this being of issue and making it more and more difficult for people to find employment, but at the end of the day he has to comply with those rules, but also we're amenable and we're open to the Court's discretion. We're not stuck on him working at a yogurt place. He can work anywhere. He just wants to get a job.

[THE COMMONWEALTH]: Forgive me, Your Honor, but I believe that it was [counsel] who said that [Caldwell] had other employment opportunities available to him. So we just want to clarify what other employment opportunities he was referring to.

THE COURT: Nothing firm that you can speak to.

[CALDWELL'S COUNSEL]: Nothing firm. I'm just saying that, let's face it—

THE COURT: What you meant was he's employable.

[CALDWELL'S COUNSEL]: Yes. I'm not trying to be disrespectful but working in a yogurt place isn't a job that, you know, I'm a brain surgeon and I can only do this. He can work almost anywhere, at Home Depot or where it is he's going to work. It's a minimum wage or slightly above job. It's very interchangeable. It's nothing specific.

THE COURT: I think what you're telling me is that although he's retired and sixty-seven that [Caldwell's father] is still interested in working part time somewhere.

[CALDWELL'S COUNSEL]: He is. He's retired. Obviously they're retired but he has some ideas. They would

certainly comply. If the Courts want them to work, they're going to work. Whatever the Court wants we're going to do and we're going to be in compliance.

THE COURT: Okay. And [Caldwell]?

[CALDWELL'S COUNSEL]: The same, Your Honor, whatever the Court tells us.

THE COURT: He has nothing specific in mind.

[CALDWELL'S COUNSEL]: No, we can get him, that's not, like I said, it's not a real specialized job. He can work anywhere.

[THE COMMONWEALTH]: So forgive me, but I thought that when the correction was put on the record was that at the time they were interviewed by the Adult Probation Office the information provided was that they were not employed. We came here today and the information I thought was that they are employed. So is [Caldwell] employed or is he not employed?

[CALDWELL'S COUNSEL]: He has employment available to him providing what happens to him.

THE COURT: Doing what?

[CALDWELL'S COUNSEL]: Working at their yogurt place. That being said – the moral of the story, Your Honor, is he has a job opportunity. He wasn't really sure what's going to happen here today as none of us are.

THE COURT: Okay.

[CALDWELL'S COUNSEL]: And once that moves forward he does want to work. He will be employed. That's all I wanted to share with the Court.

THE COURT: Okay.

N.T., 12/22/16, at 46-50.

After hearing argument from the parties, the trial court sentenced Caldwell to 1 to 7 years' incarceration for one of the convictions for possession of child pornography,[5] a concurrent 1 to 7 years' incarceration on the conviction for criminal use of a communications facility, and a consecutive 1 to 5 years' incarceration on the conviction for display of obscene and other sexual materials.

On December 29, 2016, Caldwell filed a post-sentence motion for reconsideration of sentence, which the trial court denied on January 3, 2017. On January 26, 2017, Caldwell timely filed a notice of appeal.

Caldwell raises one issue on appeal:

> Whether the Sentencing Court committed an abuse of discretion in considering factors outside of the [S]entencing [G]uidelines in determining the sentence of [Caldwell], specifically, the future employment of [Caldwell], the level of supervision and training of a potential supervising jurisdiction, or in treating [Caldwell] differently based upon his residence outside of Pennsylvania.

Caldwell's Br. at 4 (suggested answer omitted).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before we address such a challenge, we must first determine:

---

[5] The trial court imposed no further penalty on the other conviction for possession of child pornography.

(1) whether the appeal is timely; (2) whether [the a]ppellant preserved his issue; (3) whether [the a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (quoting

*Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super. 2006)).

Caldwell filed a timely notice of appeal. Caldwell, however, failed to preserve his claim that the trial court relied on impermissible sentencing factors in his post-sentence motion. In that motion, Caldwell asked the court to modify his sentence based on his health issues, his remorse for the crime, and his continuing treatment with Dr. Pass. Caldwell's motion did not argue that the trial court used supervision issues or Caldwell's proffered post-incarceration employment as impermissible factors in sentencing. Nor did Caldwell raise this claim at the time of sentencing. Because Caldwell's failure denied "the sentencing judge an opportunity to reconsider or modify [his] sentence on this basis," *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003), we conclude that Caldwell has waived his discretionary aspects of sentencing challenge.[6] *See Commonwealth v. Bullock*, 948

---

[6] Caldwell also failed to include a Pennsylvania Rule of Appellate Procedure 2119(f) concise statement of reasons for allowance of appeal regarding the discretionary aspects of sentencing. However, Caldwell's failure to include this statement would not have been fatal to his claim because Caldwell's brief adequately addressed the allegedly impermissible
*(Footnote Continued Next Page)*

A.2d 818, 826 (Pa.Super. 2008) (concluding that appellant waived discretionary aspects of sentencing claim where he failed to raise issue before trial court orally or by written motion).

Even if Caldwell had preserved this issue, we would conclude that the trial court did not abuse its discretion. "Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010). Caldwell asserts that the trial court relied on two impermissible factors in sentencing. First, Caldwell contends that the trial court's inquiry of Dr. Pass regarding the supervision of sexual offenders in Florida and Pennsylvania reveals that the trial court considered "whether probation officers have adequate training to supervise sex offenders," thus placing "an impossible burden upon a defendant to convince the court that he or she will be adequately supervised by his supervising officer." Caldwell's Br. at 8-9. Similarly, Caldwell asserts that the trial court's inquiry of Dr. Pass regarding Caldwell's planned employment in the frozen yogurt business evinces the trial court's consideration of an "immaterial" factor to

_(Footnote Continued)_ ───────────────

factors and the Commonwealth waived this defect by failing to object. *See Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa.Super. 2009) (addressing discretionary aspects of sentencing claim despite appellant's failure to include Rule 2119(f) statement because Commonwealth did not object to defective brief).

sentencing, as "every job and every social situation exposes an individual to children in some form or another." Caldwell's Br. at 11.

With respect to the consideration of impermissible sentencing factors, we have explained:

> It is an abuse of discretion, as a denial of due process of law, for the sentencing court to consider irrelevant factors during sentencing. Thus, previous sentences have been vacated because, in imposing sentence, the sentencing court relied upon, *e.g.*: the defendant's decision to stand trial rather than plead guilty, **Commonwealth v. Bethea**, . . . 379 A.2d 102, 106, 107 ([Pa. ]1977); prior constitutionally infirm convictions, **Commonwealth v. Calvert**, . . . 344 A.2d 797 ([Pa.Super. 1]975); the defendant's political ideology, **Commonwealth v. Berrigan**, . . . 535 A.2d 91 ([Pa.Super. ]1987) (*en banc*) . . .; unverified hearsay, **id.**; and the defendant's status as a naturalized citizen, **Commonwealth v. Dugan**, . . . 483 A.2d 965 ([Pa.Super.] 1984).
>
> It is not enough that a trial court simply *entertained* impermissible evidence in its deliberations. A court is "ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence." **Commonwealth v. Penrod**, . . . 578 A.2d 486, 491 ([Pa.Super. ]1990). Thus, a sentence must be vacated only where "it reasonably appears from the record that the trial court *relied* in whole or in part upon such [an impermissible] factor." **Commonwealth v. Bethea**, *supra*, 379 A.2d at 107 (emphasis added).

**Commonwealth v. Smithton**, 631 A.2d 1053, 1056-57 (Pa.Super. 1993).

We conclude that the trial court did not rely on impermissible factors in imposing sentence. As the trial court stated in its Pennsylvania Rule of Appellate Procedure 1925(a) opinion:

> Although [the trial court heard testimony on] supervision of [Caldwell] in this jurisdiction and to a lesser extent,

- 11 -

Florida, the Court did not take into account even a scintilla of "the level of supervision and training of a potential jurisdiction" or [Caldwell's] residence outside of Pennsylvania, in arriving at its sentence in this case. This Court did consider the nature of the offenses, the need for continuing treatment so as to lessen the likelihood of re-offending due to the fluid risk factors as outlined by the treating expert, Dr. Pass, and [Caldwell]'s resistance to accepting responsibility for his numerous criminal activities, all of which are permissible factors for consideration in fashioning an appropriate sentence taking into account [Caldwell]'s rehabilitative needs, as well as the public's right to be protected from criminal behavior.

Rule 1925 Opinion, 3/1/17, at 3-4 ("1925(a) Op."). The context of the trial court's questioning about the supervision of sex offenders shows that, at most, the trial court was educating itself about the supervision system to determine how Dr. Pass could continue treating Caldwell and how treatment providers and the Department of Corrections would address potential violations by Caldwell.

We also conclude that the trial did not improperly rely on Caldwell's employment plan in imposing sentence. The trial court stated that it "considered [Caldwell]'s one stated actual job opportunity, employment by his co-defendant father in a franchise business selling a product known to be attractive to children, only in relation to [Caldwell]'s continuing fluid risk factors, not for any reason relative to his employability." 1925(a) Op. at 3.

Because Caldwell has failed to show that the trial court considered any impermissible factors, much less *relied* on impermissible factors in imposing sentence, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/2017