J. S27041/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DARREN EDWARD ENNIS, | : | |
| | : | |
| Appellant | : | No. 2210 EDA 2014 |

Appeal from the Judgment of Sentence January 6, 2014
In the Court of Common Pleas of Monroe County
Criminal Division No(s).: CP-45-CR-0001020-2012
CP-45-CR-0001315-2012

BEFORE: FORD ELLIOTT, P.J.E., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED JANUARY 15, 2016**

Appellant, Darren Edward Ennis, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas after a jury found him guilty of four counts of aggravated indecent assault and two counts of corruption of minors.[1]  He claims (1) the evidence was insufficient to support the convictions; (2) the verdicts were against the weight of the evidence; (3) the trial court erred in admitting hearsay and prior bad acts evidence at trial; (4) the mandatory minimum sentences under 42 Pa.C.S. § 9718(a)(3) are unconstitutional in light of ***Alleyne v. United States***, 133 S.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125(a)(7) (complainant under thirteen years old), 3125(b) (complainant a child), 6301(a)(1).

Ct. 2151 (2013); (5) the court abused its discretion in ordering some of his sentences to run consecutively; (6) the court erred and abused its discretion when it found he was a sexually violent predator ("SVP"); and (7) the court erred in denying his motion for the presiding judge to recuse.[2]  We affirm

---

[2] We have reordered and reorganized Appellant's questions presented on appeal, which read:

> 1. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO SENTENCING [Appellant] TO A CONCURRENT TERM RATHER THAN CONSECUTIVE TERM OF INCARCERATION BASED UPON THE FACTS OF THE CASE AND THE JUR[Y's] VERDICT WHICH FAILED TO MAKE SPECIFIC FINDINGS.
>
> 2. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN THAT THE SENTENCE IMPOSED UPON [Appellant] PURSUANT TO 42 PA.C.S.[ ] § 9718(A)(3) CONSTITUTES AN ILLEGAL SENTENCE BECAUSE THE FACTS NECESSARY FOR THE IMPOSITION OF THE MANDATORY MINIMUM WERE NOT ESTABLISHED BEYOND A REASONABLE DOUBT OR FOUND BY THE JURY?
>
> 3. WHETHER THE COMMONWEALTH FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT WAS A SEXUALLY VIOLENT PERSON.
>
> 4. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING HEARSAY AND AN EXPERT OPINION INTO EVIDENCE BY ALLOWING THE REPRESENTATIVE OF THE SEXUAL OFFENDERS ASSESSMENT BOARD TO TESTIFY TO ALLEGATIONS OF ABUSE IN WRITTEN RECORDS, INCLUDING POLICE REPORTS AND THE AFFIDAVIT OF PROBABLE CAUSE, WHEN SUCH ALLEGATIONS HAD NOT BEEN ESTABLISHED BY TESTIMONY AT THE SVP HEARING, NOR BY ADMISSION OF [Appellant], TO BE FACTS OF THE CASE.

the conviction, but are constrained to vacate the sentence and remand this case for resentencing.

We summarize the procedural history of this appeal.[3]  On April 27, 2012, Appellant was charged with numerous counts of aggravated indecent assault, corruption of minors, indecent assault, and endangering the welfare of children.  The Commonwealth alleged that Appellant sexually abused two of his children, B.E. and A.E. (collectively "Complainants"), at their residence

_____

> 5. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION OR ERRED AS A MATTER OF LAW IN FAILING TO GRANT RECONSIDERATION OF ITS FINDING THAT [Appellant] IS A SEXUALLY VIOLENT PREDATOR.
>
> 6. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION OR ERRED AS A MATTER OF LAW IN PERMITTING HEARSAY EVIDENCE AND PRIOR ALLEGED BAD ACTS INTO EVIDENCE.
>
> 7. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO APPOINT A PSYCHOTHERAPIST FOR [Appellant's] EVALUATION.
>
> 8. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO GRANT [Appellant's] MOTION FOR RECUSAL.
>
> 9. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FAILING TO GRANT THE MOTION FOR AN ARREST OF JUDGMENT, JUDGMENT FOR ACQUITTAL, AND/OR MOTION FOR A NEW TRIAL AS THE VERDICTS WERE CONTRARY TO THE WEIGHT OF THE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE.

Appellant's Brief at 3-5.

[3] We review the evidence in this case in detail below.

in Pennsylvania ("Incident 1") and in a car near a grocery store ("Incident 2"), after moving from Idaho to Pennsylvania in November or December 2009.

On December 11, 2012, the Commonwealth filed a notice to admit evidence under the "Tender Years Statute." **See** 42 Pa.C.S. § 5985.1(b). On April 16, 2013, Appellant filed a motion to recuse the trial judge, alleging, *inter alia*, the judge had presided over his family court matters, including a proceeding to terminate his parental rights to Complainants, and had exhibited bias in its decision in that matter. On May 6 and 7, 2013, respectively, the Commonwealth filed a Pa.R.E. 404 notice of intent to admit "prior bad acts" and an amended Tender Years Statute notice. On May 14, 2013, the trial court denied Appellant's request for recusal. The court reserved its rulings on the Commonwealth's pretrial motions.

Appellant and Codefendant proceeded to a joint jury trial beginning on July 11, 2013.[4] At trial, Complainants testified from a remote location.[5] Immediately after Complainants' testimony, Codefendant's counsel sought an offer of proof. The Commonwealth requested rulings to permit Complainants' foster mother ("Foster Mother") and a county Children and Youth Services ("CYS") caseworker, Sherry Bradshaw, to testify about B.E.'s

---

[4] Appellant was represented by privately-retained counsel.

[5] At the time of trial, B.E. and A.E. were twelve and ten years old, respectively.

prior reports of abuse by Appellant. The trial court excused the jury for the day, conducted hearing on the proffer, and ruled the witnesses' testimony was admissible under the Tender Years Statute.

On July 23, 2013, the jury found Appellant guilty of four counts of aggravated indecent assault and two counts of corruption of minors for Incident 2.[6] The jury acquitted Appellant of all charges related to the alleged abuse in Incident 1 and the indecent assault and endangering the welfare of children charges related to Incident 2.

The trial court ordered the preparation of a presentence report and an assessment by the Sexual Offenders Assessment Board ("SOAB"). Two days later, on July 25, 2013, the Commonwealth filed a notice of its intent to seek mandatory minimum sentences for "offenses against infant persons." *See* 42 Pa.C.S. § 9718(a)(3). On December 5, 2013, after receiving a copy of the SOAB assessment, Appellant filed a motion requesting the appointment of a psychotherapist.

On January 6, 2014, the trial court convened a joint SVP and sentencing hearing. It reserved ruling on Appellant's motion for appointment of a psychotherapist and heard the SOAB assessor's testimony. The court then denied Appellant's motion for the appointment of an expert. N.T., SVP/Sentencing Hr'g, 1/6/14, at 45-46. At the conclusion of the

---

[6] The jury also found Codefendant guilty of two counts of endangering the welfare of children.

hearing, the court found Appellant to be an SVP and ordered an aggregate term of twenty-to-forty years' imprisonment, which consisted of (1) two mandatory ten-to twenty-year sentences to run consecutively, and (2) two one-half-to-one year sentences for corruption of minors, ordered to run concurrently.

Appellant, on January 16, 2014, filed timely post-sentence motions, which the trial court denied on January 21, 2014.[7] Appellant's counsel, on February 10, 2014, filed a motion to withdraw his appearance, asserting Appellant wished to appeal, but could not afford his services. Mot. to Withdraw Appearance, 2/10/14, at ¶ 4. On February 19th, the court granted Appellant's counsel leave to withdraw and appointed new counsel. On March 14, 2014, the court vacated the prior appointment and appointed present counsel to represent Appellant. The court's March 14th order stated, "Appointed counsel is given ninety (90) days leave *nunc pro tunc* in which to file a Notice of Appeal in this matter." Order, 3/14/14. Appellant, though present counsel, filed a notice of appeal on June 9, 2014, within ninety days of the court's March 14th order,[8] and subsequently complied with the court's order to submit a Pa.R.A.P. 1925(b) statement.

---

[7] The trial court filed a corrected sentencing orders on January 31, 2014, to indicate it found Appellant to be an SVP.

[8] We acknowledge that this appeal is, on its face untimely. *See* Pa.R.A.P. 903(a); Pa.R.Crim.P. 720(A)(2)(a). However, we find that the complications in the appointment of present counsel and present counsel's reliance on the

Appellant directs his first two claims to the sufficiency and weight of the evidence at trial. *See* Appellant's Brief at 28-29. Our review reveals these claims are waived for the failure to develop meaningful appellate arguments, but are meritless in light of the record.[9]

"The Pennsylvania Rules of Appellate Procedure require that each question an appellant raises be supported by discussion and analysis of pertinent authority, and failure to do so constitutes waiver of the claim." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super.) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014) (citing, *inter alia*, Pa.R.A.P. 2119(a)). "'[T]his Court will not act as counsel and will not develop arguments on behalf of [an appellant].'" *Id.* (citations omitted).

Instantly, Appellant's sufficiency and weight of the evidence arguments lack any discussion. *See* Appellant's Brief at 28-29. Further, his bare assertion that his sufficiency and weight of the evidence arguments are "intertwined" with his prior claims is misleading,[10] and, in any event,

---

trial court's setting of a ninety-day period to take an appeal constitute breakdowns in the operation of the court that excuses the untimeliness of the notice of appeal. *See Commonwealth v. Coolbaugh*, 770 A.2d 788, 791 (Pa. Super. 2001).

[9] Our review of the record was necessitated, in part, by Appellant's argument that the trial court was biased and abused its discretion when denying his motion for recusal.

[10] For example, the majority of Appellant's brief focuses on the trial court's SVP and sentencing determinations, as well as the alleged bias of the trial court. *See* Appellant's Brief at 10-21, 23-28. Appellant discusses the trial

misapprehend the relevant standards of review.[11]   Appellant's Brief at 29.

Under these circumstances, waiver is appropriate.   ***See Buterbaugh***, 91

A.3d at 1262.

_____

evidence presented at trial in one argument challenging the admission of hearsay and prior bad acts evidence.  ***Id.*** at 21-23.

[11] Our standards for reviewing challenges to the sufficiency and weight of the evidence are well settled.

> A claim challenging the sufficiency of the evidence is a question of law.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law.  When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.  Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.  An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror.  Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.  Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them

A review of the record nonetheless reveals no basis to disturb the verdicts. The Commonwealth's trial evidence established the following. In November of 2009, Appellant, Codefendant, Complainants, and Complainant's siblings were living in Idaho. N.T. Trial, 7/12/13, at 12-13.

---

or to give them equal weight with all the facts is to deny justice."

***Commonwealth v. Widmer***, 744 A.2d 751-52 (Pa. 2000) (citations and footnote omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Id.*** at 753 (citation omitted).

Aggravated indecent assault is defined as follows:

> **(a) Offenses defined.—** . . . a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
>> (1) the person does so without the complainant's consent;
>
>> \* \* \*
>
>> (7) the complainant is less than 13 years of age; or
>
> **(b) Aggravated indecent assault of a child.—**A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S. § 3125(a)(1), (7), (b).

Corruption of minors is defined, in relevant part, as: "whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age . . . commits a misdemeanor of the first degree." 18 Pa.C.S. § 6301(a)(1).

On November 12, 2009, Officer Tosha Williams responded to their Idaho residence for a report of "child abuse," and Codefendant informed the officer that Appellant sexually abused Complainants.[12]  *Id.* at 15-16.  Detective Angela Munson testified she personally interviewed Appellant in Idaho, while Complainants were interviewed by social workers and medical personnel.[13] *Id.* at 34, 40.

Detective Munson testified Appellant denied the sexual abuse allegations, but observed "very obvious sweating around his hairline and his appearance was flushed" after she confronted him with the allegation. *Id.*  A recording of Detective Munson's interview was played to the jury during the Commonwealth's rebuttal case.  N.T. Trial, 7/22/13, at 40.

---

[12] Appellant's counsel requested an offer of proof regarding the relevance of Officer Williams's testimony.  N.T. Trial, 7/12/13, at 10.  The Commonwealth asserted that it intended to elicit evidence regarding the allegations against Appellant in Idaho to establish Codefendant's "state of mind" for the charges of endangering the welfare of children.  *Id.* at 11.

[13] Appellant's counsel objected before Detective Munson testified, asserting her testimony would be "irrelevant," "immaterial," and "prejudicial."  N.T. Trial, 7/12/13, at 26.   The Commonwealth responded that Detective Munson's testimony regarding Codefendant's statements to her was admissible hearsay under the "party opponent" exception and would also establish Codefendant's awareness of the investigation into Appellant.  *Id.* The Commonwealth further stated that Detective Munson would testify about her interview of Appellant and his denial of the allegations.  *Id.* at 28.  The trial court overruled Appellant's initial objections, but later sustained Appellant's counsel's hearsay objection to the Detective's testimony that B.E. reported being sexually abused in Idaho.  *Id.* at 28, 34.

Appellant, Codefendant, Complainants, and Complainants' siblings moved to Pennsylvania in November or December 2009. N.T. Trial, 7/15/13, at 15-16. They initially lived at a family member's residence ("Residence 1"), but in May 2010, they moved to their own home ("Residence 2"). *Id.*

A Pennsylvania investigation of the sexual abuse of Complainants began on October 29, 2010. At 3:21 a.m. that morning, Police Officer Charles Brown received a report of a domestic disturbance at Residence 2. N.T., 7/12/13, at 64. The officer went to the residence, talked to Appellant on the back porch, and went inside the home to talk with Codefendant. The officer testified at trial that Codefendant stated she and Appellant had a verbal dispute. *Id.* Codefendant told the officer that Appellant had molested B.E. in Idaho, there was a case pending, and "that's why the two were in Pennsylvania now." *Id.* at 65.

Shortly before 2 p.m. that afternoon, Officer Richard Gehring received a 911 dispatch to Residence 1 for a suicide attempt.[14] *Id.* at 75-77, 83. The officer found Appellant inside that home. *Id.* at 77. The officer testified at trial that Appellant was banging his head, asked the officer to shoot him, and stated he did not want to live. *Id.* at 78-79. The officer took Appellant

---

[14] Codefendant and B.E. were outside in a car near Residence 1.

into custody, transported him to a hospital for a mental evaluation, and filed an involuntary commitment form against him. *Id.* at 79, 81.

That evening, Dawn Walker, a CYS supervisor, and Sherry Bradshaw, a CYS caseworker, went to Residence 2 to talk with Codefendant. *Id.* at 87, 89, 129-30. They informed Codefendant of the referral for sexual abuse. *Id.* at 89, 131. Walker and Bradshaw testified that Codefendant admitted Appellant was the subject of a sexual abuse charge in Idaho. *Id.* Walker and Bradshaw discussed a safety plan for Codefendant to have no contact with Appellant, to contact law enforcement upon his discharge from the hospital, and to file a protection from abuse order against him. *Id.* at 90, 133-34.

On November 2, 2010, four days after the initial events, CYS received another referral[15] and placed Complainants and their siblings in foster care. *Id.* at 97-99. One day later, on November 3, 2010, Appellant wrote a note stating he "molested [B.E.]" in Idaho, but he "never ever molested [her] at any other time or place ever again which the state of Pennsylvania claims I did." *Id.* at 225. He stated that the allegations of abuse were "coerced." *Id.* Appellant also wrote that Codefendant was unaware of the abuse and requested that she be allowed to keep custody of Complainants and the

---

[15] The circumstances and content of the November 2, 2010 referral is not apparent from the record because the trial court sustained Appellant's counsel's objection to hearsay. N.T. Trial, 7/12/13, at 99.

other children. *Id.* That same day, Appellant, who was still hospitalized, "took a pencil and shoved it up his right nostril until he heard a 'pop[.']" *Id.* at 217. He was transferred for medical treatment.

Meanwhile, on November 3, 2010, the Children's Advocacy Center ("CAC") conducted initial interviews of Complainants, at which Complainants denied the sexual abuse allegations. *Id.* at 123. The November 3, 2010 interviews were recorded and played to the jury.[16] N.T. Trial, 7/22/13, at 5-6.

Foster Mother testified at trial that approximately one week after the initial CAC interview, A.E. "told [her] some things," which prompted Foster Mother to contact CYS. N.T. Trial, 7/12/13, at 123. CYS arranged for CAC to conduct a second interview of A.E. *Id.* While A.E. was interviewed by CAC, B.E. asked where A.E. was. *Id.* Foster Mother "told [her] and then that's when [B.E.] started to tell [Foster Mother] about things that happened to her." *Id.* When A.E. came home from the interview, she told B.E. she "had to go to that place because they were asking [her] questions about [Appellant]." *Id.* at 124. A.E. "told [B.E.] in length where she went and then that's when they started talking about what happened with [Appellant]." *Id.* at 123.

---

[16] The trial transcript reveals that the jury heard or viewed recorded CAC interviews from November 3, 2010, and April 17, 2012. The record does not include those recordings.

Foster Mother also testified that B.E. disclosed an incident to her.[17] B.E. told her she "was in her bedroom at home[,]" Appellant "was drunk[,]" and he "pulled her out of bed." *Id.* at 117. Appellant "dragged her into the bedroom and he pulled down his pants and he made her rub his private part." *Id.* at 118. Foster Mother also testified that B.E. disclosed Incident 2. B.E. told her that they "had gone to either Wal-mart or Giant . . . near a highway." *Id.* at 121. When Codefendant went inside to go shopping, Appellant "stuck his finger inside of [B.E.] and then did it to A.E. . . . ." *Id.*

On December 14, 2010, Sherry Bradshaw conducted a CYS visit with Complainants at the foster home.[18] Bradshaw testified B.E. told her about Incident 2. Specifically, B.E. stated she and A.E. "were behind the Giant by the highway [and Appellant] stuck his fingers in her and [A.E.]." *Id.* at 101. B.E. told Bradshaw the abuse occurred in the "family van." *Id.*

On April 17, 2012, eight days before the instant charges were filed against Appellant, CYS arranged for additional CAC interviews of Complainants. The April 17, 2012 interviews were recorded and played to

---

[17] As discussed above, Appellant's counsel objected to Foster Mother's testimony regarding B.E.'s reports of abuse, which the trial court overruled after an *in-camera* hearing. N.T. Trial, 7/11/13, at 124; N.T., *In Camera* Proceeding, 7/11/13 at 15.

[18] As discussed above, Appellant's counsel' objected to Bradshaw's testimony regarding B.E.'s reports of abuse, which the trial court overruled after an in-camera hearing. N.T. Trial, 7/11/13, at 124; N.T. *In-Camera* Proceeding, 7/11/13, at 35.

the jury during the Commonwealth's case in rebuttal. N.T. Trial, 7/22/13, at 41.

Complainant's trial testimony regarding Incident 1 and 2 was as follows.[19] B.E. described Incident 1, testifying that "one time[,]" she was on the top of a bunk bed when Appellant tried to pull off her pants. N.T. Trial, 7/11/13, at 40. He then "pulled [her] out of [her] bed and . . . brought her like through the hallway to his room and then . . . started like asking me to like rub his private part." *Id.* at 40. She refused and "he just like put my hand on his private part." *Id.* He then took her to the bathroom, "used a rag to wipe his private part," "tried to make [her] rub it again[,]" and told her that "now it was clean." *Id.* at 46. When asked whether this incident occurred in Pennsylvania, B.E. initially answered, "I'm not sure[,]"[20] but later testified, "No." *Id.* at 47-48.

The Commonwealth asked B.E. whether Appellant touched her in Pennsylvania, and B.E. testified as follows about Incident 2. Appellant, Codefendant, and Complainants, went to the grocery store. *Id.* at 50. Codefendant exited the car and went inside. *Id.* Appellant drove around to "the back" and came around to the back of the car. *Id.* He tried to pull

---

[19] Complainants were the Commonwealth's first witnesses at trial.

[20] B.E. was unable to provide circumstantial evidence to determine whether Incident 1 occurred in Idaho or Pennsylvania, such as her age or grade at the time. N.T. Trial, 7/11/13, at 48. She also testified she had bunk beds in Idaho and in Residence 2 in Pennsylvania. *Id.* at 47-48.

down their pants and "stick his finger inside of like [their] private part . . . ." *Id.* He told them "he was just trying to help [them] and check [them]." *Id.*

Additionally, the Commonwealth asked whether Appellant "touch[ed] her like that other times after [she] moved to Pennsylvania," and she responded, "No." *Id.* at 51. The Commonwealth, over Appellant's counsel's objections, asked B.E. whether Appellant "touched [her] in Idaho."[21] *Id.* at 55. She responded, "I don't remember." *Id.* When asked by the Commonwealth if "anything else like that" happened in Idaho, she answered, "No." *Id.* at 54. She also did not remember talking to the police in Idaho. *Id.* at 55.

A.E. testified that Appellant "stuck his finger in our private part" and witnessed Appellant doing so to B.E., and to two other siblings when changing their diapers. *Id.* at 100. She testified that the abuse occurred at Residence 1, Residence 2, and "once at the store." *Id.* at 100-01. She described Incident 2 as follows: "[W]e let [Codefendant] get out of the car and then [Appellant] drove to the back of the lot and then he just came to the back of the car and he pulled our pants down and he put his finger in our private part." *Id.* at 101.

---

[21] Appellant's counsel objected to the Commonwealth questioning of B.E. regarding Idaho, asserting that such evidence was irrelevant and did not "qualify as 404(b) material." N.T., Trial 7/11/13, at 51-52. In support, he argued B.E. denied the abuse occurred in Idaho. *Id.* at 52.

Appellant testified on his own behalf and denied abusing Complainants. N.T., 7/15/13, at 139-40. He stated the initial argument with Codefendant on October 29, 2010, involved a "discussion about financial problems." *Id.* at 141. He stated the latter incident on that day occurred after he relapsed on alcohol. *Id.* at 142. He also stated he wrote the note admitting that abuse occurred in Idaho because Codefendant told him he needed to "confess" for Codefendant could retain custody. *Id.* at 178-79.

In light of the foregoing record, and mindful of our standards of review, we discern no merit to Appellant's arguments that the evidence was insufficient to sustain his convictions for Incident 2, or that the trial court abused its discretion when denying his request for a new trial. We reiterate that a victim's testimony alone may establish each element of the offense. *See Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160-61 (Pa. Super. 2007); *Commonwealth v. Filer*, 846 A.2d 139, 141-42 (Pa. Super. 2004). Moreover, we agree with the trial court that the jury was entitled to resolve the issues of fact and credibility before it and that its guilty verdicts as to Incident 2 did not "shock the conscience." *See Widmer*, 744 A.2d at 751-52. Thus, Appellant's sufficiency and weight of the evidence claims warrant no relief.

Appellant's third claim focuses on the trial court's evidentiary rulings at trial. Specifically, he argues that the testimony regarding B.E.'s prior reports of abuse did not qualify for a hearsay exception because the

statements "lacked detail, spontaneity, consisten[cy, and] repetition . . ." as well as "time, etc." Appellant's Brief at 22. According to Appellant, "[t]he statements were at most cumulative and [introduced] for the sole issue of corroboration." *Id.* Appellant also argues the allegations of sexual abuse in Idaho constituted "prior bad acts," "testified through hearsay," and "could be nothing more than prejudicial." *Id.* at 22-23. He suggests B.E. testified "these alleged acts never occurred" in Idaho. *Id.* at 23.

The trial court did not address a Tender Years Statute argument in its Pa.R.A.P. 1925(a) opinion. *See* Trial Ct. Op., 9/5/14, at 13. It observed Appellant's Pa.R.A.P. 1925(b) statement raised the following claim: "[T]he Trial Court abused its discretion or erred as a matter of law in permitting hearsay evidence." *Id.* (quoting Appellant's Pa.R.A.P. 1925(b) statement, 6/30/14, at ¶ 5). The court declined to speculate regarding the basis of Appellant's hearsay claim and found any subsidiary argument waived. *Id.* The trial court also found Appellant's Rule 1925(b) statement challenging the admission of prior bad acts vague, but asserted its rulings were proper. *Id.* at 31; *see also* Appellant's Pa.R.A.P. 1925(b) Statement at ¶ 13 ("The Trial Court erred as a matter of law and abused its discretion in permitting prior alleged bad acts in evidence.").

Pennsylvania Rule of Appellate Procedure 1925(b)(4)(ii) states, "The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for

the judge." Pa.R.A.P. 1925(b)(4)(ii). Rule 1925(b)(4)(vii) provides "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

Instantly, we are constrained to agree with the trial court that Appellant's Pa.R.A.P. 1925(b) lacked adequate specificity to discern his intended challenge to the admission of "hearsay" evidence under the Tender Years Statute. Appellant's present counsel had the opportunity to review the trial transcripts before filing a Rule 1925(b) statement, and the bases of the trial court's various hearsay ruling were evident in the record. Nonetheless, the Rule 1925(b) statement did not identify the Tender Years Statute or any factor related to that statute. Thus, we are compelled to conclude that this claim has been waived. **See** Pa.R.A.P. 1925(b)(4)(ii), (vii).

As to Appellant's claim regarding "prior bad acts," we agree with the trial court that the Pa.R.A.P. 1925(b) statement was also vague. However, our review of the record reveals it provides adequate context for the trial court to identify Appellant's intended arguments vis-à-vis the alleged sexual abuse in Idaho.[22] Therefore, we decline to find waiver and will address this issue.

Pennsylvania Rule of Evidence 404 provides, in relevant part:

---

[22] Specifically, Appellant objected to two major areas involving his alleged prior bad acts: the sexual abuse allegations in Idaho and references to his abuse of Complainants' siblings. The references to the alleged abuse of Complainants' siblings was fleeting.

**(b) Crimes, Wrongs or Other Acts.**

(1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3) *Notice in a Criminal Case*. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1)-(3).

In **Commonwealth v. Knowles**, 637 A.2d 331 (Pa. Super. 1994), which was decided before the promulgation of the Rules of Evidence,[23] the defendant was convicted of sexually abusing the complainant. The defendant appealed claiming that the admission of the complainant's testimony that the defendant abused her five years earlier in Texas was improper. This Court affirmed, reasoning:

In general, evidence of other wrongful conduct not charged in the information on which the defendant is being

---

[23] Although Knowles predates the Pennsylvania Rules of Evidence, Rule 404(b) "embodies the common scheme or plan exception to the prohibition against use of prior crimes evidence." **See Commonwealth v. Aikens**, 990 A.2d 1181, 1181 n.2 (Pa. Super. 2010). Therefore, we may rely such cases even though they were filed before enactment of those rules. **Id.**

tried is inadmissible at trial except in certain limited circumstances.

* * *

. . . Remoteness . . . is only one factor to be considered when determining the admissibility of the evidence. Whether evidence is too remote in time to be probative, moreover, is largely within the discretion of the trial court.

[The defendant's] conduct in Texas was not a single, isolated act. He and [the complainant] were alone every night for a week, and the sexual assaults continued over a six day period. They were committed by one who normally did not have the opportunity to become intimate with [the complainant]. The acts stopped when [the complainant] returned to her parents and, of course, after she moved with her parents to Pennsylvania. After [the defendant] also moved to Pennsylvania, however, the sexual abuse was resumed when [the defendant] had an opportunity to be alone with [her]. We conclude, therefore, that the evidence was relevant to show that [the defendant] had a continuing passion for illicit sexual contact with [the complainant] and acted on that passion when the opportunity arose.

*Knowles*, 637 A.2d at 578-79 (citations omitted).

In *Aikens*, 990 A.2d at 1181, the defendant was convicted of sexually assaulting the complainant after watching a pornographic movie with her. At trial, the defendant's daughter testified the defendant engaged in similar conduct with her seventeen years earlier, when she was a similar age as the complainant. After this Court affirmed the judgment of sentence, the defendant claimed in a PCRA petition that his appellate counsel was ineffective for failing to preserve a direct appeal challenge to the admission

- 21 -

of the prior bad acts testimony. This Court affirmed the denial of PCRA

relief, reasoning, in relevant part:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> In the present case, we conclude that the evidence in question was admissible under the common scheme design or plan exception. . . . In [**Commonwealth v. Lukitsch**, 680 A.2d 877 (Pa. Super. 1996), a pre-Rules of Evidence case], the defendant was convicted of sexually molesting his stepdaughter. At trial, the court had permitted the defendant's biological daughter to testify about sexual abuse that the defendant had perpetrated on her when she was a child, even though that abuse ended nineteen years before trial and began twenty-four years before trial. The defendant claimed that the prior assaults were too remote. We held that the prior incidents were not too distant since there was only a six-year lapse between the previous assaults and the inception of the defendant's abuse of the victim in that case.
>
> We held that "while remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." After analyzing the facts relating to the defendant's abuse of his daughter and the victim in question, we concluded in **Luktisch** that the two incidents were factually similar and that the defendant's prior conduct was admissible under the common scheme or plan exception to the prohibition against introduction of prior bad acts.

In the case at bar, we believe that the fact pattern involved in the two incidents was markedly similar. In both cases, the victims were of like ages . . . fourteen years old . . . and . . . fifteen years old. Both victims were [the defendant's] biological daughters. [The defendant] initiated the contact during an overnight visit in his apartment. He began the sexual abuse by showing the girls pornographic movies. The assaults occurred in bed at night. While [the defendant] raped [his daughter] and indecently assaulted [the complainant], [the complainant] stopped [the defendant] from disrobing her and committing the more serious sexual assault. In addition, [the defendant] mimicked the grinding movements of sexual intercourse on [the complainant] in order to sexually gratify himself. These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern. Hence, we reject [the defendant's] position that we are pigeonholing sexual abuse cases to such an extent that any prior instance of child abuse would be admissible in a subsequent child abuse prosecution. . . . [T]he similarities at issue herein were "not confined to insignificant details that would likely be common elements regardless of who committed the crimes."

*Aikens*, 990 A.2d at 1185-86 (citations omitted).

In light of the foregoing principles, we discern no merit to Appellant's argument that the trial court erred in admitting references to the allegations of abuse in Idaho as evidence of identity and motive. We further note that the evidence was also necessary to establish whether the alleged abuse in Incident 1 occurred in Pennsylvania or Idaho in light of B.E.'s testimony. Thus, Appellant's suggestion that the admission of the evidence "could be

nothing more than prejudicial" lacks merit.[24]  Moreover, Appellant's selective

reading of a single passage from B.E.'s testimony to assert that abuse did

not occur in Idaho did not affect the admissibility of the evidence under Rule

404(b)(2), but rather raised a matter for the jury's determination.

Appellant next challenges the legality of the court's aggregate twenty-

to-forty year sentence.  He claims Section 9718(a)(3) is unconstitutional in

---

[24] The trial court charged the jury with the appropriate use of the evidence from Idaho.  **See** N.T. Trial, 7/23/13, at 110-11.

> You heard evidence tending to prove that [Appellant] is guilty of an offense that occurred in Idaho for which he is not on trial.  I am speaking about the testimony that you heard regarding the incidents that occurred in the State of Idaho.
>
> This evidence is before you for a limited purpose, that is for the purpose of tending to show motive, intent, plan, knowledge, identity, absence of mistake.  This evidence must not be considered by you in any way other than the purposes I just stated.
>
> You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt for the things that are alleged to have occurred here in Monroe County.
>
> The evidence is not admissible to show action and conformity with what is alleged to have occurred in the State of Idaho.

**Id.**  We note Appellant refers to the court's statement regarding "evidence tending to prove that [Appellant] is guilty of an offense that occurred in Idaho" as evidence of bias.

light of **Alleyne** and its Pennsylvania progeny. Appellant's Brief at 10-12.

Relief is due.

Our standards of review are as follows:

> "A challenge to the legality of a sentence . . . may be entertained as long as the reviewing court has jurisdiction." It is also well-established that "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." "An illegal sentence must be vacated." "Issues relating to the legality of a sentence are questions of law[.] . . . Our standard of review over such questions is *de novo* and our scope of review is plenary."

**Commonwealth v. Wolfe**, 106 A.3d 800, 801-02 (Pa. Super. 2014) (citations omitted), *appeal granted*, 121 A.3d 433 (Pa. 2015).[25]

In **Wolfe**, this Court vacated a sentence imposed under Section 9718(a)(1). In that case, the defendant was convicted of involuntary deviate sexual intercourse—complainant under sixteen years of age, 18 Pa.C.S. § 3123(a)(7), and sentenced under the mandatory minimum provisions in Section 9718(a)(1) and (c), which stated:

---

[25] The Pennsylvania Supreme Court granted allowance of appeal on the following question:

> Whether the Superior Court of Pennsylvania's *sua sponte* determination that the ten year mandatory minimum sentence for involuntary deviate sexual intercourse (Person less than 16 years) imposed pursuant to 42 Pa.C.S.[ ] § 9718(a)(1) is facially unconstitutional is erroneous as a matter of law?

**Wolfe**, 121 A.3d 433 (Pa. 2015).

**(a) Mandatory sentence.—**

(1) A person convicted of the following offenses **when the victim is less than 16 years of age** shall be sentenced to a mandatory term of imprisonment as follows:

. . .

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)—not less than ten years.

. . .

**(c) Proof at sentencing.—**The provisions of this section shall not be an element of the crime, and notice of the provisions of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

*Id.* at 801-02 (quoting 42 Pa.C.S. § 9718(a)(1), (c)) (emphasis added).

The ***Wolfe*** Court summarized the legal principles applicable to an

***Alleyne*** challenge:

In ***Alleyne***, the Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt. ***Alleyne*** is an extension of the Supreme Court's line of cases beginning with ***Apprendi v. New Jersey***, 530 U.S. 466 . . . (2000)[ and held:]

It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. Indeed, criminal statutes have long

specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty. This historical practice allowed those who violated the law to know, *ex ante*, the contours of the penalty that the legislature affixed to the crime—and comports with the obvious truth that the floor of a mandatory range is as relevant to wrongdoers as the ceiling. A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.

Moreover, it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's expected punishment has increased as a result of the narrowed range and the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish. Why else would Congress link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.

In **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), this Court confronted the same type of challenge to the mandatory minimum sentence found at Section 9712.1, regarding the proximity between drugs and guns. Section 9712.1 had the same format as Section 9718 insofar that one subsection contains the additional fact that triggers the mandatory penalty, and another subsection states that this fact shall be found by the trial court by a preponderance of the evidence at sentencing.

The **Newman** Court first concluded that the defendant's sentence was illegal in light of **Alleyne** and required this

Court to vacate and remand for resentencing. However, this Court further noted that **Alleyne** issues are subject to harmless error analysis but that the **Alleyne** issue in **Newman** was not harmless. Finally, this Court rejected the Commonwealth's argument that, if the error was not harmless, the appropriate remedy would be to remand to the trial court to empanel a second sentencing jury. Specifically, in rejecting this argument, the **Newman** Court concluded that Section 9712.1 in its entirety must be struck down as unconstitutional in light of **Alleyne**, concluding that its subsections were not severable.

> The Commonwealth's suggestion that we remand for a sentencing jury would require this court to manufacture whole cloth a replacement enforcement mechanism for Section 9712.1; in other words, the Commonwealth is asking us to legislate. We recognize that in the prosecution of capital cases in Pennsylvania, there is a similar, bifurcated process where the jury first determines guilt in the trial proceeding (the guilt phase) and then weighs aggravating and mitigating factors in the sentencing proceeding (the penalty phase). However, this mechanism was created by the General Assembly and is enshrined in our statutes at 42 Pa.C.S.[ ] § 9711. We find that it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**. We cannot do so.

* * *

As noted above, the mandatory minimum statute in this case contains the same format as the statutes struck down as facially unconstitutional in **Newman** . . . . Following **Newman**'s instructions, **we are required to conclude that Section 9718 is also facially unconstitutional**.

We recognize that this specific case is unique insofar that the additional fact triggering the mandatory sentence is also contained as an element within the subsection of [a] statute under which [the defendant] was convicted. Therefore, in order to convict [the defendant] . . . , the

> Commonwealth was already required to prove beyond a reasonable doubt that the victim was less than 16 years old.
>
> However, we are not concerned with [the defendant's] conviction in this appeal, only the imposition of the mandatory minimum sentence.

*Wolfe*, 106 A.3d at 802-03, 805 (citations and footnotes omitted) (emphasis added). Thus, although the *Wolfe* Court considered a sentence under Section 9718(a)(1), it concluded that Section 9718, in its entirety, offended the constitutional principles set forth in *Alleyne* and *Newman*. *Id.*

Instantly, Appellant, in relevant part, was convicted under 18 Pa.C.S. § 3125(b). The mandatory minimum provision is set forth in Section 9718(a)(3), and states:

> (3) A person convicted of the following offenses shall be sentenced to a mandatory term of imprisonment as follows:
>
> 18 Pa.C.S. § 3121(c) and (d)--not less than ten years.
>
> 18 Pa.C.S. § 3125(a)(7)--not less than five years.
>
> **18 Pa.C.S. § 3125(b)--not less than ten years**.

42 Pa.C.S. § 9718(a)(3) (emphasis added).

That Section 9718(a)(3) requires only a conviction for a predicate offense without requiring the finding of an additional fact at sentencing appears to distinguish it from Subsection (a)(1). Further, Section 9718(a)(3) was enacted in its current form in 2004, two years before the now-unconstitutional fact-finding provision in Section 9718(c).

Nevertheless, the practice of our Court has been to apply *Alleyne* broadly. *See, e.g.*, *Commonwealth v. Young*, 1653 EDA 2014 (unpublished memorandum) (Pa. Super. Mar. 18, 2015), *appeal denied*, 123 A.3d 1062 (Pa. 2015). *But see Young*, 123 A.3d at 1063 (Eakin, J., dissenting) (suggesting "the Superior Court's decision [in *Young*] affirming the unconstitutionality of § 9718(a)(3) cannot be based on *Commonwealth v. Hopkins*, ––– Pa. ––––, 117 A.3d 247 (2015), which deals with statutes requiring proof of additional facts."). Although reasonable minds may disagree over whether *Alleyne*, *Hopkins*, *Newman*, and *Wolfe* apply with equal force to Section 9718(a)(3), we are constrained to follow *Wolfe*'s broad mandate and thus conclude the instant sentences imposed under are illegal. Accordingly, we vacate the sentences and remand this matter for resentencing.

Appellant's fifth claim focuses on the trial court's decision to impose consecutive sentences was an abuse of discretion because it involved a single criminal episode. We acknowledge Appellant also suggests that the sentence was the result of the trial court's bias. However, we are constrained to conclude that no relief is due.

The procedures for determining whether to address the merits of discretionary aspects of sentencing claim are well settled:

> The right to appellate review of the discretionary aspects
> of a sentence is not absolute, and must be considered a
> petition for permission to appeal. An appellant must

satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> \*   \*   \*

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.
>
> \*   \*   \*

> We have stated that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Long standing precedent of this Court recognizes that 42 Pa.C.S.[ ] § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. "We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently."

***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014).

Instantly, Appellant's Rule 2119(f) statement suggests that the consecutive nature of the mandatory minimum sentence rendered the aggregate sentence "excessive." Appellant's Brief at 6. He does not allege bias. *See id.* Accordingly, given the narrow claim set forth in his Rule 2119(f), we discern no substantial question warranting review. *See Zirkle*, 107 A.3d at 132. In any event, were we to address this issue, we would note that although Appellant was found guilty of Incident 2, during which he assault two victims. Thus, we discern no basis to conclude that the trial court acted unreasonably when imposing consecutive sentences and declining Appellant's invitation to permit a "volume discount" on his crimes. *Cf. id.*

Appellant next claims that the trial court erred in designating him SVP. He argues the trial court erred in denying his motion for appointment of an expert and violated on his right to present evidence. Appellant's Brief at 20-21. In support, he cites *Commonwealth v. Curnutte*, 871 A.2d 839 (Pa. Super. 2005). He also argues "the SOAB expert[, Dr. Mary Muscari,] was permitted to consider and testify to evidence that should have been inadmissible at an SVP hearing." *Id.* at 18-19. In support, he suggests Dr. Muscari referred to conduct in Incident 1, for which Appellant was acquitted. *Id.* at 19. Further, Appellant suggests Dr. Muscari impermissibly relied on hearsay statements from Idaho that referenced his prior bad acts. *Id.* He emphasizes Dr. Muscari would not have found Appellant to be a SVP were it

not for her reliance on the reports of the Idaho incident. *Id.* He further argues the Commonwealth failed to establish one of the diagnostic criteria for pedophilia, namely, that the conduct occur over a span of at least six months. *Id.* No relief is due

As to the appointment of an expert for an SVP proceeding, we reiterate: "The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion." *Commonwealth v. Cannon*, 954 A.2d 1222, 1226 (Pa. Super. 2008) (citation omitted).

In *Curnutte*, this Court recognized an indigent defendant's right to have an expert appointed and remanded for the appointment of an expert. *Curnutte*, 871 A.2d at 842, 844. However, the *Curnutte* Court recognized that "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one." *Id.* at 842. Our case law recognizes at least two considerations that must be addressed when seeking the appointment of an expert for the purposes of an SVP proceeding. First, "[t]here must be some showing as to the content and relevancy of the proposed expert testimony before such a request will be granted." *Id.* at 842. Second, there must be finding of indigence. *See Cannon*, 954 A.2d at 1226.

Instantly, the trial court found that (1) Appellant failed to establish indigence; (2) Appellant's written motion did not state an expert was required to rebut the SOAB report; and (3) an independent mental health assessment was unnecessary for sentencing in light of the mandatory provisions. Trial Ct. Op. at 23-24; N.T. SVP/Sentencing Hr'g, at 9-13, 46. Appellant fails to address any one of the trial court's reasons for denying the motion to appoint an expert. Significantly, Appellant does not address the trial court's finding that Appellant intentionally distanced himself from family funding, on which he had relied throughout trial. Therefore, this argument is waived. *See* Pa.R.A.P. 2119(a); ***Buterbaugh***, 91 A.3d at 1262.

As to the SVP determination, we emphasize that the Pennsylvania Supreme Court has cautioned this Court not to reassess the credibility of an expert presented at an SVP hearing. ***See Commonwealth v. Meals***, 912 A.2d 213, 224 (Pa. 2006).

> A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing.

> \* \* \*

> Our task in either scenario is one of review, not one of reweighing or assessing the evidence in the first instance.

*Commonwealth v. Prendes*, 97 A.3d 337, 356 (Pa. Super.) (citations omitted), *appeal denied*, 105 A.3d 738 (Pa. 2014).

> In *Prendes*, 97 A.3d 337 (Pa. Super. 2014), this Court observed:
>
> > "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." "If the expert states an opinion the expert must state the facts or data on which the opinion is based." "Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." Opposing counsel bears the burden of exposing and exploring "any weaknesses in the underpinnings of the expert's opinion."

*Prendes*, 97 A.3d at 358 (citations omitted). Further, "[a]n SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment." *Id.* (citation omitted).

Instantly, our review reveals that Dr. Muscari misstated the facts of the underlying case as "[t]wo victims, multiple incident" and "penetration of the victims['] vagina[s] and one of the victims had touched his penis." N.T. SVP/Sentencing Hr'g at 17-18. These misstatements of fact are problematic because they appear to refer to offenses for which Appellant was acquitted, *i.e.,* all of the charges related to Incident 1, as well as B.E.'s testimony that Appellant had her touch his penis at Residence 2. *Cf. Commonwealth v. Smithton*, 631 A.2d 1053, 1058 (Pa. Super. 1993) (vacating sentence

where court relied upon "irrelevant" testimony that "bore directly on crimes for which the defendant had been acquitted"). *But see Commonwealth v. Stokes*, 38 A.3d 846, 863 (Pa. Super. 2011) (discussing use of "acquitted conduct" at sentencing).

However, a further review of the transcript reveals that Dr. Muscari based her ultimate opinion on reports from Idaho that Appellant placed B.E.'s hand "on his private area" during an incident at "Sally's Beauty Supply Store on November 1, 2009" and the incident in Pennsylvania. *See id.* at 28, 30. She further related that she found the Idaho allegations credible in light of Appellant's admission to sexual abuse of B.E. in Idaho. *Id.* at 21, 30. Further, the court inquired independently as to Dr. Muscari's reasons for crediting Appellant's admissions and the allegations of abuse and the decisive weight she placed on the Idaho allegations. *Id.* at 30. Indeed, Dr. Muscari explained she would not have found Appellant to be an SVP were it not for the Idaho allegations.

In light of the narrow review called for by the Pennsylvania Supreme Court, we conclude that Appellant's claims go to the weight and not the admissibility of Dr. Muscari's opinions. Moreover, despite her reliance on allegations that did not result in a conviction in Idaho, as well as her possible misstatement of the record, the court had at least some basis for adopting her opinion as dispositive of its SVP determination. In short, we are

constrained to conclude that while Appellant's arguments reveal possible defects in the basis for Dr. Muscari's opinions, we must affirm.

We now address Appellant's claim that the trial court erred in denying his motion for recusal of the presiding judge. He observes the presiding judge also considered Appellant's and Codefendant's "lengthy [CYS] matter," including a dependency proceeding and the termination of their parental rights. Appellant's Brief at 24.

As examples of bias, Appellant observes that the trial court, in its opinion in support of termination asserted that termination was appropriate even if he received treatment and was not deemed to be a threat to children and that Appellant failed to "take ownership of the serious allegations." *Id.* at 25 (quoting Trial Ct. Op., 4/12/12, at 20-21). He also cites to the court's colloquy on his right to testify, during which the court stated either Appellant or Codefendant "knowingly lied" at a prior family court proceeding, which could be used to impeach him if that party elected to testify. *Id.* at 26-27. He also refers to the court's cautionary instruction regarding prior bad acts evidence, and notes the court told the jury it heard "evidence tending to prove that [Appellant] is guilty of an offense that occurred in Idaho for which he is not on trial." *Id.* at 28 (quoting N.T. Trial, 7/23/13, at 110). Lastly, Appellant cites to the court's statements at sentencing during which the court found the case disturbing due, in part, to "the level of deception" exhibited by Appellant and Codefendant. *Id.* at 27; *see also*

N.T. SVP/Sentencing Hr'g at 50). Appellant notes the court referred to Appellant's alleged testimony that he did not want Codefendant to become pregnant again, as well as Codefendant's pregnancy during trial and their attempts to conceal the pregnancy. Appellant's Brief at 27. He emphasizes that the record contains no indication that he did not want Codefendant to become pregnant again.[26] *Id.* In sum, Appellant asserts the court revealed a personal, unsubstantiated animus against him and burdened his presumption of innocence in the underlying criminal matter.

The following principles govern our review:

> If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide "whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary." This assessment is a "personal and unreviewable decision that only the jurist can make." "Once the decision is made, it is final. . . ."

> [An appellate court] presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion."

---

[26] We note that Appellant's counsel did not object to any of the trial court's statements at trial or sentencing in this matter. Moreover, Appellant did not renew his request for recusal at or after trial.

***Commonwealth v. Druce***, 848 A.2d 104, 108 (Pa. 2004).

> [T]he mere participation by the trial judge in an earlier stage of the proceedings does not provide a *per se* basis for requiring recusal of the trial judge.
>
> > The determination of whether a trial judge should recuse himself depends upon the following: the type of evidence that the judge hears; if the evidence is inadmissible and is of a highly prejudicial nature, the judge should recuse himself or declare a mistrial if it is too late for recusal. The judge should also recuse himself whenever there is substantial doubt as to his ability to preside impartially. The burden to show prejudice, however, is on the party seeking recusal. If the evidence is admissible, or not of a highly prejudicial nature, recusal is not required, and while it may be the better practice to have a different judge preside over trial than preside over pre-trial proceedings, such a practice is not constitutionally required and has not been made the basis for setting aside a verdict reached in an otherwise proper trial. This principle appears to be based on the prevailing view that judicial fact-finders are capable of disregarding prejudicial evidence.

***Commonwealth v. Postie***, 110 A.3d 1034, 1038 (Pa. Super. 2015) (citation omitted).

The trial court, in its Pa.R.A.P. 1925(a) opinion in this matter, asserted it had "no interest whatsoever in or personal knowledge of the case at bar, and we did not have any bias or prejudice towards [Appellant] based on his previous [CYS] matter or otherwise. We were fully capable of distinguishing between [Appellant's] criminal case and his [CYS] case." Trial Ct. Op. at 15. We have reviewed the entire record, and although the trial court may have made statements that appear negative or prejudicial when read in isolation,

we conclude that the trial court did not abuse its discretion when refusing to recuse. **See Postie**, 110 A.3d at 1038.

Judgment of sentence vacated. Case remanded for resentencing. Jusidiction reliquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2016