J-A06016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MIMI ANN FROST | : | |
| | : | |
| Appellant | : | No. 464 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 12, 2024
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000323-2024

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.: **FILED: March 18, 2026**

Mimi Ann Frost (Appellant) appeals from the judgment of sentence imposed following her guilty pleas to one count each of unlawful restraint of a minor by a parent (involuntary servitude), harassment (subject another to physical contact), harassment (course of conduct), aggravated assault (causes/attempts to cause serious bodily injury), aggravated assault (victim less than 13), corruption of minors, recklessly endangering another person, endangering the welfare of children, and simple assault; 29 counts of conspiracy to commit false imprisonment of a minor by a parent; 30 counts of false imprisonment of a minor by a parent; 43 counts of conspiracy to commit unlawful restraint of a minor by a parent; and 44 counts of unlawful restraint

of a minor by a parent (risk of serious bodily injury); and her no contest plea to one count of strangulation.[1]  After careful review, we affirm.

On February 6, 2024, law enforcement filed a criminal complaint alleging Appellant engaged in the repeated and protracted abuse of her six-year-old daughter (the victim).  ***See generally*** Affidavit of Probable Cause, 2/6/24.

The criminal complaint alleged, in part, the following: On the morning of January 7, 2024, police responded to a residence on Sheridan Avenue in Fayette County, Pennsylvania (the residence), after receiving a report that the victim was unresponsive and in need of emergency medical treatment.  ***Id.*** at 1.  Upon arriving, police noted a strong odor of urine and feces pervaded the residence, and various surfaces were smeared with excrement.  ***Id.***  First responders advised law enforcement that the victim appeared to be malnourished, and that she bore numerous bruises and marks.  ***Id.*** at 3. Hospital staff eventually told police that, upon her arrival at the hospital, the victim's internal body temperature was 88.7 degrees Fahrenheit.  ***Id.***

Police learned that the victim resided with her biological father, Jacob Weight (Weight);[2] her 16- and 8-year-old brothers; her 5-year-old sister; her

---

[1] 18 Pa.C.S.A. §§ 2902(c)(2), 2709(a)(1), (3), 2702(a)(1), (9), 6301(a)(1)(i), 2705, 4304(a)(1), 2701(a)(1), 903, 2903(c), 2902(c)(1), 2718(a)(1).

[2] It is unclear from the record whether Appellant and Weight were married.

- 2 -

17-year-old male cousin, D.C.; and Appellant. *Id.* at 2. Also in the residence were eight dogs and two cats. *Id.*

Police interviewed Weight, who related that when he awoke that morning, the interior of the residence (which did not have a working heating system) was so cold that "he could see his breath[.]" *Id.* at 3. Weight indicated that the victim was "acting funny" that morning. *Id.* Weight drove Appellant to her job as a home care aid and, upon his return to the residence, the victim's sister advised Weight that the victim "was not acting right." *Id.* at 2-3. Weight went to check on the victim in the bathroom, whereupon the victim collapsed, displaying symptoms of a seizure. *Id.* Weight called 911. *Id.*

That same date, police interviewed D.C., who described Appellant's and Weight's abusive treatment of the victim. *Id.* at 4. D.C. related that Appellant treated the victim "particularly [] poorly." *Id.* D.C. explained that Appellant "would hit the [v]ictim with anything she could get her hands on." *Id.* D.C. stated that Appellant would confine the victim to a dog crate, naked, and would often bind the victim's hands and feet with zip ties. *Id.* According to D.C., the victim would urinate and defecate while inside the dog crate, and neither Appellant nor Weight ever cleaned the crate. *Id.* D.C. speculated that the victim collapsed because "she was always freezing cold with no clothes on," and when the victim took a warm shower, it "was too much for her." *Id.*

On January 12, 2024, the victim submitted to a forensic interview, during which she related that Appellant and Weight had previously struck her with their hands, a dog leash, and a lighter. *Id.* at 6-7. The victim subsequently advised her therapist that Appellant and Weight forced the victim to sleep in a dog crate every night, and made her eat dog food. *Id.* at 7-8.

The victim's medical records detailed the numerous injuries and ailments the victim was suffering from upon her admission to the hospital. *Id.* at 8. These included abrasions, bruising, and open sores on the victim's entire body; cellulitis; hypothermia; rotten and broken teeth; malnutrition; and swollen feet that, at the time of her hospital admission, rendered the victim unable to walk. *Id.*

On March 25, 2024, the Commonwealth filed a criminal information charging Appellant with twelve related offenses. The Commonwealth filed an amended criminal information on November 27, 2024, charging Appellant with the 156 offenses described above. The amended criminal information alleged that Appellant engaged in the following criminal conduct against the victim: (1) striking the victim on her face, neck, abdomen, back, buttocks, genitals, and extremities; (2) choking the victim; (3) zip-tying the victim's hands and feet, and confining the victim to a dog crate; and (4) failing to arrange medical care or education for the victim. *See generally*, Amended Criminal Information, 11/27/24. The Commonwealth further alleged that Appellant

- 4 -

conspired with Weight[3] to restrain the victim with zip-ties, and to force the victim to remain in a dog crate. *Id.*

On December 2, 2024, the matter proceeded to a guilty plea hearing. Appellant was, and remains on appeal, represented by Attorney Gregory Kunkel, Esquire (Attorney Kunkel), of the Fayette County Public Defender's Office. The trial court summarized the factual basis for Appellant's pleas as follows:

> [T]he Commonwealth is indicating to the [c]ourt that [Appellant] kept … [the victim] locked in a dog crate, [and] zip[-]tied [the victim's] hands and feet together. That would constitute the unlawful restraint. Hit, struck the [victim] causing bruising and open sores along the jawline, neck, chest, abdomen, back, arms, legs. … Essentially, that's the basis of it. Kept [the victim] in a dog crate, zip[-]tied, injured the [victim], failed to provide care, withheld the [victim] from school. … For several months[,] kept [the victim] locked in a dog crate without [] food, water, and other care[.]

N.T., 12/2/24, at 12 (paragraph breaks omitted); *see also id.* (the trial court stating, as part of the factual basis for Appellant's plea, that Appellant conspired with Weight to commit several of the previously mentioned criminal acts).

Attorney Kunkel clarified that Appellant was "not pleading that [her criminal conduct] was 24/7." *Id.* at 13. In response to the trial court's

---

[3] At CR-000327-2024, the Commonwealth separately charged Weight with the same offenses as Appellant, excluding strangulation. The Commonwealth filed notice of consolidation of Appellant's and Weight's cases on April 9, 2024. On February 14, 2025, after Weight pled guilty to all counts, a different trial court judge sentenced him to an aggregate term of 118 to 290 months in prison.

questioning, Appellant testified that she confined the victim to a dog crate approximately two to three times a week, for a day at a time. *Id.* Appellant acknowledged that, at times, she would zip-tie the victim's hands and feet, because the victim "was breaking out while I was at work." *Id.* Appellant further agreed that there were times when she would not regularly provide the victim with food, and that Appellant did not arrange for medical care or education for the victim. *Id.* at 14. Appellant indicated she could not recall choking the victim, but did not "contest[] that the Commonwealth has evidence of [the victim] being choked." *Id.* at 15.

At the conclusion of the hearing, Appellant entered her pleas as described above. The trial court deferred sentencing, and ordered a presentence investigation (PSI) report.

The matter proceeded to sentencing on December 10, 2024. The victim's foster mother offered the following victim impact testimony (without objection) concerning the lasting impact of Appellant's crimes on the victim:

> [The victim] is not here because she has already suffered enough mental and physical abuse at the hands of [Appellant]. Not another second of [the victim's] precious … life will ever again be spent experiencing the living hell that [the victim] was put through. This [abuse occurred] … on a daily basis. … It never ended. The [victim] speaks of this. [The victim's siblings and D.C.] all speak to this.
>
> … [Appellant] used a six[-]year[-]old little girl as an example to the rest of the children in [her] home of what could happen to them if they did not listen to [her] …. [Appellant] kept [the victim] in a dog cage in the middle of the living room[,] naked[,] laying in her own urine and feces. That was [the victim's] living quarters.

- 6 -

[The victim] was often hog[]tied with zip[-]ties around her wrists and ankles to the point [that] she was found with open wounds that not only covered those areas, but also covered her buttocks and upper thighs[. The victim] still has scars to these areas today, as she will [for] the rest of her life. [The victim's] legs, specifically, are covered in scars. We have come to find out [the victim's scars] are from the level of physical abuse that no human or even animal ever deserves to endure. And yet, [the victim] did daily endure the torture. The beatings with broom handles, shots by a BB gun for pure enjoyment. The other children were instructed to partake in the abuse. The level of mental abuse that occurred in this hell house is shocking and disturbing to hear and we, sitting in this room, are adults. We are just hearing it. These children lived it.

….

… The therapeutic professionals described the level of bruising as "something out of a horror movie." The physical damage to this little girl required sedation and pediatric reconstructive dental surgery in attempts to save what baby teeth were savable. [The victim] describe[d] being fed dog food and state[d] it was hard, and it hurt [her] teeth. … [Unlike the victim, Appellant] will have a flush toilet and not be forced to lay in [her] own feces or forced to drink [her] own urine, as was often the punishment for [the victim]. [Appellant] won't have ice cold water dumped on [her] head for pure enjoyment, while hog[]tied with open wounds. [Appellant's] body won't be medically declared hypothermic at eighty-eight degrees, while unresponsive. ….

N.T., 12/10/24, at 3-6 (punctuation modified; some paragraph breaks omitted).

Next, Appellant presented her sentencing argument. Attorney Kunkel explained that Appellant "regrets the treatment of the children, in particular [the victim]." *Id.* at 7. Attorney Kunkel indicated that, while "there's no question the [victim] suffered physical problems[,] none of them are of a lasting nature…." *Id.*; *see also id.* (Attorney Kunkel acknowledging that, "at

- 7 -

the hospital, [the victim] had flea bites on her body …. Cellulitis. [The victim] was hospitalized for less than a week and discharged."). Attorney Kunkel conceded that the victim had suffered from hypothermia, but pointed out that Appellant had left the residence several hours before emergency services arrived on the date of the victim's seizure. *Id.*; *see also id.* (Attorney Kunkel arguing that Weight "was at the [residence] with the children that day[,] and was there when the [victim] became hypothermic."); *id.* at 9 (exercising her right to allocution, Appellant stating, "I'm sorry I put drugs and money before [the victim].").

Pertinently, the Commonwealth offered the following in support of its argument for a lengthy prison sentence:

> I disagree that [the victim] is not going to suffer adverse effects, that [the victim] hasn't suffered lasting injury. [The victim] was discharged from the hospital after a week. I can tell you that I've seen [the victim,] in April[ of 2024], and she still wasn't walking right, and I can tell you that I saw her yesterday and she's beautiful, she's happy, she's healthy. It's wonderful.
>
> But the lasting effects of having a six-year-old consume her own urine and feces and live in a cage to be hogtied with her hands behind her back, with her feet bound to her hands. …. [W]e're lucky, we are fortunate that this was not a homicide. Because it was close. Eighty-eight-degree body temperature, when [the victim] was at the hospital covered in sores, blood infection. What a doctor was going to come testify [to] at trial was nothing short of torture. Torture. Not mistakes. Not, not being able to ask for help. Torture.
>
> And the Commonwealth's position is that this [c]ourt should give a sentence commensurate with[ Appellant's conduct]; this [c]ourt should give a sentence that would put [Appellant] in prison for the rest of her natural life. ….

*Id.* at 9-10 (punctuation modified; some paragraph breaks omitted).

At the conclusion of the hearing, the trial court purported to sentence Appellant to an aggregate 35 to 70 years in prison.[4, 5] On December 12, 2024, the trial court amended its sentencing order to include a consecutive 12 months' probation. Appellant timely filed a post-sentence motion, challenging, *inter alia*, the discretionary aspects of her sentence. On March 14, 2025, the trial court granted Appellant's motion, in part, and corrected its sentencing order to reflect that it imposed an aggregate sentence of 30 to 60 years in prison, followed by 12 months' probation. Appellant timely filed a notice of appeal.[6] Appellant and the trial court have complied with Pa.R.A.P. 1925.

_____

[4] The trial court announced at the sentencing hearing that it was consecutively imposing the following prison terms: (1) five to ten years for unlawful restraint of a minor by a parent (involuntary servitude); (2) ten to twenty years for aggravated assault (causes/attempts to cause serious bodily injury); (3) ten to twenty years for aggravated assault (victim less than 13); (4) five to ten years for strangulation; and (5) no further penalty for the remaining charges. Thus, the trial court imposed an aggregate term of 30 to 60 years in prison.

[5] The sentencing court noted that the seventh edition of the sentencing guidelines applied to Appellant's offenses committed in 2023, and the eighth edition applied to the offenses committed in 2024. N.T., 12/10/24, at 11. Appellant and the Commonwealth agreed with the trial court's recitation of the applicable guideline ranges. *Id.* at 12. The trial court acknowledged that the sentences it imposed constituted upward departures from the sentencing guidelines. *Id.* at 14.

[6] Appellant purported to appeal from the original, December 10, 2024, sentencing order. Notice of Appeal, 4/14/25. However, where a trial court amends a judgment of sentence during the period it maintains jurisdiction
*(Footnote Continued Next Page)*

Appellant raises the following issues:

1. Whether the trial court's sentence was unduly harsh where the trial court imposed a sentence of thirty (30) to sixty (60) years['] incarceration[,] where the [trial court's] sentence was not only outside of [the] Sentencing Guidelines[,] but the maximum sentences permitted by law?

2. Whether the trial court erred as a matter of law and abused its discretion in imposing a sentence of thirty (30) years to not more than sixty (60) years['] incarceration[,] where the trial court failed to consider and apply all of the sentencing factors under 42 Pa.[]C.S.[A.] § 9721(b), failed to thoroughly examine Appellant's background and character, and considered evidence of conduct for which [] Appellant was never charged?

Appellant's Brief at 4.[7]

_____

pursuant to 42 Pa.C.S.A. § 5505 (permitting a court to modify any order within 30 days after its entry), the direct appeal lies from the amended judgment of sentence. We further note that the trial court's March 14, 2025, order, correcting a patent and obvious clerical error in the original sentencing order, did not constitute a resentencing. **See Commonwealth v. Borrin**, 12 A.3d 466, 471 (Pa. Super. 2011) ("[A] trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders. A trial court maintains this authority even after the expiration of the 30[-]day time limitation set forth in 42 Pa.C.S.A. § 5505 for the modification of orders." (citations and footnote omitted)); **see also Commonwealth v. Harris**, 248 A.3d 498, 20 WDA 2020 (Pa. Super. 2021) (unpublished memorandum at 6-7) (concluding the trial court, in correcting a clear clerical error, "did not resentence [the a]ppellant"); Pa.R.A.P. 126(b) (providing that we may consider nonprecedential decisions of this Court filed after May 1, 2019, for their persuasive value). Accordingly, our docket reflects that this appeal lies from the December 12, 2024, amended judgment of sentence.

[7] Appellant abandons on appeal her claim that her sentence violated the double jeopardy clauses of the United States and Pennsylvania Constitutions. **See** Concise Statement, 5/5/25, at 1-3. We additionally note that, despite claiming in her statement of questions involved that her sentence exceeded "the maximum sentences permitted by law[,]" Appellant's Brief at 4, each of Appellant's sentences were within the statutory limits. Further, Appellant does

*(Footnote Continued Next Page)*

We consider Appellant's claims together, as they both challenge the discretionary aspects of her sentence. *See Commonwealth v. Smith*, 863 A.2d 1172, 1177 (Pa. Super. 2004) (excessiveness claims implicate the discretionary aspects of sentencing); *see also Commonwealth v. Davis*, 341 A.3d 808, 812 (Pa. Super. 2025) (observing "that a claim [that] a sentencing court relied on impermissible factors in imposing a sentence presents a challenge to the discretionary aspects of a sentence." (citation omitted)). "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010) (citation omitted). An appellant challenging the discretionary aspects of her sentence must first invoke this Court's jurisdiction:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

---

not challenge, in the argument section of her appellate brief, the legality of her sentence. *See* Appellant's Brief at 13-19 (Appellant arguing the trial court abused its sentencing discretion), 17-18 (Appellant accurately noting that "[a] sentence within the statutory limit constitutes an abuse of discretion where the sentence is so manifestly excessive as to constitute to[o] severe a punishment." (citation omitted)).

- 11 -

*Commonwealth v. Glawinski*, 310 A.3d 321, 325 (Pa. Super. 2024) (citation omitted).

Here, Appellant timely filed a notice of appeal, preserved the issues in her timely post-sentence motion, and included the requisite Rule 2119(f) statement of reasons for allowance of appeal in her brief. *See* Appellant's Brief at 10-12.

We next consider whether Appellant presents a substantial question. It is well established that a "substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McLendon*, 293 A.3d 658, 670 (Pa. Super. 2023) (quotation marks omitted). In determining whether a substantial question exists, we do not

> examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Glawinski*, 310 A.3d at 325 (citation omitted).

In her Rule 2119(f) statement, Appellant contends that the trial court "failed to carefully consider all relevant sentencing factors required by 42 Pa.[]C.S.[A.] § 9721(b)." Appellant's Brief at 11. Appellant further argues that, in imposing sentence, the trial court "impermissibly based its punitive

sentence on the Commonwealth's inflammatory arguments at sentencing[,] and alleged factors and conduct that were never alleged in the criminal charges that were filed against [Appellant]." *Id.* at 12. We conclude Appellant raises a substantial question. *See Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016) (observing that "[a]n averment that the trial court failed to consider relevant sentencing criteria… as [Section] 9721(b) requires, presents a substantial question for our review in typical cases." (citation, quotation marks, and brackets omitted)); *Commonwealth v. Smithton*, 631 A.2d 1053, 1055 (Pa. Super. 1993) (concluding the appellant raised a substantial question where he asserted the trial court relied on an impermissible sentencing factor, *i.e.*, victim impact testimony from alleged victims for crimes of which the appellant was acquitted).

In asserting the trial court's sentence, which departed from the sentencing guidelines,[8] was unduly harsh and excessive, Appellant argues that

---

[8] Appellant and the Commonwealth agreed that the relevant, applicable standard-range minimum sentences, under the eighth edition of the sentencing guidelines, were as follows:

- Unlawful restraint of a minor by a parent (involuntary servitude) – 20 to 26 months in prison;
- Aggravated assault (causes/attempts to cause serious bodily injury) – 72 to 84 months in prison;
- Aggravated assault (victim less than 13) – 84 to 96 months in prison;
- Strangulation – 24 to 30 months in prison.

*(Footnote Continued Next Page)*

"the trial court focused entirely on punishing [Appellant] without adequately considering her remorsefulness or her need for rehabilitation[.]" Appellant's Brief at 18. Appellant insists that "the trial court failed to consider [Appellant's] genuine remorsefulness[,] and appears to have been swayed by the Commonwealth's unsubstantiated claims regarding the extent of [the victim's] injuries …." *Id.* Appellant concludes that "there is no logical way to reconcile the extreme sentence imposed on [Appellant] when compared to the significantly lesser sentence that a different trial judge imposed on … Weight for the same conduct." *Id.* at 19.[9]

---

*See* N.T., 12/10/24, at 10-12. The trial court's sentences exceeded the aggravated-range guideline recommendations. *See* 204 Pa. Code § 303a.14 (Sentencing matrix).

[9] We observe that because Weight was not sentenced until February 14, 2025, Appellant could not preserve this alleged sentencing disparity argument in her December 20, 2024, post-sentence motion. This claim is nevertheless waived based on Appellant's failure to support her argument with pertinent legal authority. *See* Appellant's Brief at 19 (without citation to legal authority, Appellant arguing that, "[w]hile [Appellant] acknowledges that the sentences imposed on co-defendant[]s need not be the same, the extreme difference in the sentencing underscores that [Appellant's] sentence is unduly harsh and excessive …."); *see also Commonwealth v. Miller*, 212 A.3d 1114, 1131 (Pa. Super. 2019) ("This Court will not become counsel for an appellant and develop arguments on an appellant's behalf[.]" (citation omitted)); Pa.R.A.P. 2119(a) (requiring argument to be "followed by such discussion and citation of authorities as are deemed pertinent.").

Even if preserved, this claim would merit no relief. *See Commonwealth v. Szcesniewski*, 591 A.2d 1055, 1057 (Pa. Super. 1991) (concluding a trial court "was not required to explain the alleged disparity in sentencing[,]" where a different judge imposed sentence on a co-defendant (citation omitted)).

- 14 -

Concerning her claim that the trial court relied on impermissible sentencing factors, Appellant argues the Commonwealth referred to several facts that were "not in the [amended c]riminal [i]nformation filed against [Appellant]." *Id.* at 13. Specifically, Appellant takes issue with the following statements made by the Commonwealth at sentencing: (1) Appellant forced the victim to consume her own urine and feces, as well as dog food; (2) "we are fortunate that this was not a homicide[,]" noting the victim's 88-degree body temperature and blood infection; and (3) "I s[aw the victim] in April and she still wasn't walking right." *Id.* at 13-14.

Appellant emphasizes that, on the date the victim was hospitalized, she "left the residence at approximately 7:00 a.m. …, and was at work providing the only means of financial support for the family when the ambulance arrived approximately four hours later …." *Id.* at 14. Appellant argues that she

> was not charged in this case with attempted homicide[,] nor was she charged with causing [the victim] to experience hypothermia. Similarly, [Appellant] was not charged with, and did not plead guilty to, forcing [the victim] to eat dog food as stated by the Commonwealth [at sentencing]. N.T., 12/10/24, at 10. Nor was [Appellant] charged with[,] and did not plead guilty to[,] forcing [the victim] to eat her own feces or drink her urine as the Commonwealth claims. As [a] result, these alleged factors should have no bearing whatsoever on [Appellant's] sentencing.

*Id.* at 14-15 (citation modified).

Appellant concludes that "the trial court failed to consider [Appellant's] genuine remorsefulness[,] and appears to have been swayed by the

- 15 -

Commonwealth's unsubstantiated claims regarding the extent of [the victim's] injuries that were attributable to [Appellant's] conduct." *Id.* at 18-19.

"The standard employed when reviewing the discretionary aspects of sentencing is very narrow." *Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018) (citation omitted). Our Supreme Court

> has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court [] offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants[,] and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

*Commonwealth v. Harvard*, 64 A.3d 690, 701-02 (Pa. Super. 2013) (brackets omitted) (quoting *Commonwealth v. Walls*, 926 A.2d 957, 961-62 (Pa. 2007)); *see also Commonwealth v. Rominger*, 199 A.3d 964, 970 (Pa. Super. 2018) ("The trial court has discretion within legal limits when

sentencing a defendant, and absent an abuse of that discretion, we will not disturb its sentence.").

We have explained that

[t]he sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only.

**Commonwealth v. McLaine**, 150 A.3d 70, 76-77 (Pa. Super. 2016) (citation omitted).

"When reviewing a sentence outside of the guidelines, the essential question is whether the sentence imposed was reasonable." **Commonwealth v. Durazo**, 210 A.3d 316, 321 (Pa. Super. 2019) (citation omitted). "A sentence may be found unreasonable if it fails to properly account for the four statutory factors of [42 Pa.C.S.A. §] 9781(d)."[10] **Commonwealth v. Pisarchuk**, 306 A.3d 872, 881 (Pa. Super. 2023) (citation omitted).

---

[10] Section 9781(d) directs appellate courts reviewing sentencing determinations to "have regard for:"

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

*(Footnote Continued Next Page)*

Moreover,

[i]n deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. [I]n making this determination it is not necessary that an appellate court be convinced that the trial judge[,] in fact[,] relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor.

*Commonwealth v. Roden*, 730 A.2d 995, 997 (Pa. Super. 1999) (citations omitted).

Sentencing Code Section 9721(b) directs trial courts to adhere to the general principle that the sentence imposed should call for total confinement consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "The weighing of factors under [Section] 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weight of those factors." *Commonwealth v. Taylor*, 277 A.3d 577, 593 (Pa. Super. 2022) (quoting *Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa. Super. 2012)). Further, "[i]n imposing a sentence, the trial judge may determine whether, given the

---

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

- 18 -

facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." ***Commonwealth v. Perry***, 883 A.2d 599, 603 (Pa. Super. 2005) (citations omitted).

Instantly, at Appellant's sentencing hearing, the trial court detailed its rationale for imposing sentence as follows:

> We've considered the nature of the offense. We've considered the extent and the duration of the crime[s]. We've considered the number of offenses. We've considered the [PSI report], [Appellant's] prior record, the gravity of these offenses, the impact on the victim, the rehabilitative needs of [Appellant,] as well as the sentencing guidelines. We feel any lesser sentence would depreciate from the seriousness of th[ese] crime[s].
>
> We've also considered the significance of the young age of the victim[,] and that the victim is the child of [Appellant,] in departing from the guidelines and sentencing above the guidelines. We've considered all of these factors, and we have placed substantial weight on the fact that [Appellant was] in a parental position of trust[. Y]ou owed a duty of care to your child[,] and you violated that duty in a particularly cruel manner.

N.T., 12/10/24, at 14.

In its opinion, citing the above on-the-record justification for its sentencing, the trial court explained that

> it is evident that we considered the sentencing guidelines, the protection of the public, the gravity of the offense[s] in relation to [their] impact on the victim and the community; the rehabilitative needs of [Appellant]; [Appellant's] lack of remorse; the nature and circumstances of the crime[s]; [and] the history, character, and condition of [Appellant] and her parental relationship to [the] victim. We have complied with 42 Pa.C.S.A. §[ ]9721(b) …, there has been no abuse of our broad sentencing discretion, and we respectfully submit that the appeal is without merit and our sentence should not be disturbed.

Trial Court Opinion, 5/30/25, at 1 (punctuation modified; citation omitted).

We discern no abuse of the trial court's discretion in imposing a sentence outside of the sentencing guidelines. ***Harvard***, 64 A.3d at 701-02; ***Pisarchuk***, 306 A.3d at 881. The trial court demonstrated its awareness of the applicable sentencing guidelines, indicated its sentence was informed by the PSI report,[11] and explained that it had considered the sentencing factors set forth in Section 9721(b). Having considered the nature and circumstances of the offenses, and Appellant's rehabilitative needs, the trial court specifically noted that it was departing from the sentencing guidelines based on (1) the victim's age; and (2) the fact that Appellant betrayed and abused her position of parental trust in "a particularly cruel manner." N.T., 12/10/24, at 14.

Further, having reviewed all of the trial court's comments, we can identify no improper or erroneous consideration in its imposition of Appellant's sentence. ***Roden***, 730 A.2d at 997. Appellant asks that we infer that the trial

---

[11] A trial court imposing a sentence outside of the guidelines is not presumed to have considered all relevant information concerning a defendant's character by virtue of its review of a PSI report. ***See Commonwealth v. Dutter***, 617 A.2d 330, 332 (Pa. Super. 1992). Nevertheless, here, the trial court's stated review of the PSI report, in conjunction with its on-the-record explanation of its sentencing considerations, demonstrates the trial court's conscientiousness in imposing sentence. ***See Commonwealth v. Ali***, 197 A.3d 742, 763 (Pa. Super. 2018) ("[T]he essential inquiry is whether the sentencing court was apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." (citation and ellipsis omitted)); ***see also*** 42 Pa.C.S.A. § 9781(d)(2) (requiring appellate courts to "have regard for" the trial court's review of "any presentence investigation.").

court was swayed by allegedly improper arguments from the prosecutor,[12] but she cites no record support for this inference. **See** Appellant's Brief at 18 (arguing the trial court "**appears to have been swayed** by the Commonwealth's unsubstantiated claims regarding the extent of [the victim's] injuries …." (emphasis added)). Indeed, the record belies Appellant's claim, as the trial court's rationale set forth its consideration of only appropriate sentencing factors. **See Smithton**, 631 A.2d at 1057 (observing that "[a] court is ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence" (quotation marks and citations omitted)).

Accordingly, we discern no basis for concluding the trial court's sentence was manifestly harsh or unreasonable, or premised on impermissible sentencing considerations. Appellant is entitled to no relief.

Judgment of sentence affirmed.

_____

[12] We note that prosecutors are permitted to "make fair comment on the admitted evidence …." **Commonwealth v. Hairston**, 249 A.3d 1046, 1067 (Pa. 2021) (citation omitted). Instantly, the prosecutor's comments largely reiterated the victim's foster mother's testimony (quoted at length above), to which Appellant did not contemporaneously object or challenge in her post-sentence motion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  3/18/2026